PERDUE FARMS, INCORPORATED,
Defendant–Appellant,

v.

Darrell R. PRYOR, Plaintiff–Appellee.

No. 63S01–9509–CV–1102.

Supreme Court of Indiana.

July 22, 1997.

Marilyn R. Ratliff, Kahn, Dees, Donovan & Kahn, Evansville, for Defendant–Appellant.

Bruce A. Smith, Washington, for Plaintiff–Appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

Following injuries to his lower back incurred while attempting to repair a jammed feed auger on a farm, plaintiff-appellee Darrell R. Pryor ("Pryor") filed his two-count complaint against defendant-appellant Perdue Farms, Incorporated ("Perdue Farms"), asserting claims based on statutory strict product liability and common law negligence.

Pursuant to an agreement of the parties, a separate bench trial was conducted on the question of liability. Findings of fact were neither requested nor entered. The trial court entered a general judgment in favor of the plaintiff,[1] whereupon Perdue Farms perfected this interlocutory appeal. The Court of Appeals reversed, *Perdue Farms Inc. v. Pryor*, 646 N.E.2d 715 (Ind.Ct.App.1995), and we granted transfer.

In its appeal from the judgment, the defendant asserts three claims: (1) the absence of any duty owed by the defendant to the plaintiff precludes a judgment based upon negligence; (2) the undisputed evidence of incurred risk precludes a judgment based upon products liability; and (3) the trial court erred in failing to attribute and assign a percentage of fault to the plaintiff.

■ The applicable standard of appellate review is clear. In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence. *Sizemore v. H & R Farms, Inc.*, 638 N.E.2d 455, 457 (Ind.Ct.App.1994); *Bedford Recycling, Inc. v. U.S. Granules Corp.*, 634 N.E.2d 1361, 1363 (Ind.Ct.App.1994); *Quebe v. Davis*, 586 N.E.2d 914, 917 (Ind.Ct.App.1992). In reviewing a general judgment, we must presume that the trial court correctly followed the law. *Sizemore*; *Turpen v. Turpen*, 537 N.E.2d 537, 539 (Ind.Ct.App.1989); *Baker v. Baker*, 488 N.E.2d 361, 364 (Ind.Ct.App. 1986). Acknowledging that the judgment must be affirmed if it can be sustained under either the negligence claim or products liabil-

---

1. Because neither of the parties requested special findings of fact, and the trial court did not enter such findings *sua sponte*, the judgment entry merely states:

    This matter was heretofore submitted to the Court on January 10, 1994, for trial on the issue of liability without the intervention of a jury, and the Court having heard all the evidence on the issue of liability and having taken the same under advisement, and the parties having filed their post-trial briefs, and the Court now being duly advised in the premises, finds for the Plaintiff, and against the Defendant, and finds that Defendant is liable to the Plaintiff for Plaintiff's damages proximately caused by the injury to Plaintiff on September 26, 1988.

    It is therefore ordered, adjudged and decreed by the Court that judgment be, and the same hereby is, entered that Defendant is liable to Plaintiff for Plaintiff's damages proximately caused by the injury to Plaintiff on September 26, 1988.

    Record at 732.

ity theory, Perdue Farms contends that the undisputed evidence requires reversal. Brief of Appellant at 8, 25. On appellate review, due regard must be given the trial court's opportunity to judge the credibility of witnesses, and the judgment should not be set aside unless clearly erroneous. Ind.Trial Rule 52(A); Ind.Appellate Rule 15(N).

Following is a summary of the principal evidence favorable to the judgment. Pryor was injured while attempting to repair a jammed feed auger on the turkey farm operated by Donald Zwilling. Perdue Farms had contracted to provide Zwilling with day-old turkeys which he would raise until maturity. Perdue Farms supplied all necessary turkey feed, which it manufactured at its Washington, Indiana, feed mill. The auger, a long, screw-like device placed in a feeding tube, was used to distribute food into the barns where the turkeys were kept. Zwilling testified that he purchased his feed auger from Perdue Farms. On September 26, 1988, the auger jammed and Zwilling contacted Perdue Farms, which advised him to contact Mid-States Agricultural Equipment, the distributor for the auger manufacturer, because the auger was still under its one-year warranty. Pryor, who worked for K & M Agricultural Services installing and repairing feed delivery systems, was called out to repair the auger. Pryor went to Zwilling's farm to repair the feeding device and found the auger jammed by a stray bolt from the Perdue Farms feed mill. After removing the bolt, the auger still would not function correctly, so Pryor decided to remove the auger from the feeding tube. Pryor, who had previously removed augers by using a hand winch, decided to remove this one by hand because he did not have the winch at this time and because he had been instructed by his boss to pull it by hand to avoid bending the auger. Pryor grabbed the auger and placed his feet against a part of the equipment to get better leverage. When the auger suddenly jerked loose, he fell back against a concrete pad, injuring his back. Perdue Farms was aware that foreign objects had occasionally been discovered in their feed. In fact, they had replaced auger motors for farmers whose equipment had been damaged by objects that came from their feed. There was also testimony that feed often became hardened after delivery. The Perdue Farms Director of Live Production testified that caked feed could have also come straight from the mill. Pryor testified that he believed hardened feed prevented the auger from turning.

■ Perdue Farms contends that Pryor is not entitled to recover on his negligence claim because of the absence of any common law duty on the part of Perdue Farms toward Pryor. Perdue Farms asserts that the lack of any relationship between it and Pryor establishes the non-existence of the requisite duty, relying on the absence of privity of contract and the fact that Pryor was injured on premises not owned or operated by Perdue Farms. Citing *J.I. Case Co. v. Sandefur*, 245 Ind. 213, 197 N.E.2d 519 (1964), Perdue Farms contends that "the lack of privity between Pryor and Perdue would have negated the existence of a duty and doomed any action for injuries suffered by Pryor because of a defect in the Perdue product." Brief of Appellant at 26.

■ *Sandefur* does not support the appellant's position but rather expressly rejects the early common law doctrine of privity of contract as a prerequisite for imposition of liability for the negligent manufacture of a product. *Sandefur*, 245 Ind. at 221–222, 197 N.E.2d at 522–23. Privity of contract is no longer required if a personal injury action for a defective product sounds in tort. *Lane v. Barringer*, 407 N.E.2d 1173 (Ind.Ct.App. 1980).

■ However, while privity is not a precondition to liability, the relationship of the parties is a proper factor for consideration in determining whether a legal duty exists in a particular case. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). This determination may also consider various other factors, among which are the reasonable foreseeability of harm and public policy concerns. *See id.* In the present case, viewing the evidence favorable to judgment as we must, the relationship of the parties is that of a repairman (Pryor) fixing damage caused by a turkey feed manufacturer (Perdue Farms). The latter was aware that foreign objects were occasionally discovered in its feed, that the feed

was sometimes delivered caked, and that such conditions could render feed auger devices inoperable, thus requiring repair.

We decline to find clearly erroneous the trial court's implicit determination that Perdue Farms owed a duty of reasonable care to workers repairing conditions foreseeably resulting from its manufacture and supply of turkey feed. We therefore reject the contention of Perdue Farms that the absence of duty required the trial court to find against Pryor on the issue of negligence. Furthermore, because the plaintiff's negligence theory can be sustained, it is not necessary to address the defendant's contentions regarding the products liability theory.

■ The final appellate claim is that the trial court erred in failing to attribute and assign a percentage of fault to the plaintiff under the Comparative Fault Act because of his incurred risk.[2] The court's judgment declares "that Defendant is liable to Plaintiff for Plaintiff's damages proximately caused by the injury to Plaintiff on September 26, 1988." Record at 732. It does not imply that the court intended to decide liability apportionment during the damage phase of the trial. We read the judgment to express the court's determination that Perdue Farms is responsible for 100% of the plaintiff's damages.[3] Perdue Farms argues that the undisputed evidence established that Pryor incurred the risk of his injury and, as to Pryor's theory of liability based on negligence, the trial court should have determined the percentage of fault attributable to each party. IND.CODE § 34-4-33-5 (1993). Citing *Wilson v. Riddle*, 540 N.E.2d 629 (Ind.Ct. App.1989), it urges that the court's failure to assign fault constituted reversible error.

In *Riddle*, an automobile accident negligence case in which both the plaintiff and

defendant were asserting damage claims against each other, the trial court made factual findings that the accident was caused by the negligence of both drivers and that "the Court cannot attribute more negligence to either party." 540 N.E.2d at 630. It entered judgment denying both the plaintiff's claim and the defendant's counterclaim. The Court of Appeals reversed and remanded because of the trial court's failure to allocate fault.

Because of the *Riddle* trial court's express finding of negligence as to both the plaintiff and defendant, its failure to allocate fault pursuant to the statute could not be sustained under any legal theory. In contrast to *Riddle*, the judgment in the present case includes no findings of fact and must therefore be reviewed as a general judgment on the issue of liability. As discussed above, we presume that the trial court correctly followed the law and must affirm the trial court's general judgment if sustainable upon any basis consistent with the evidence. Thus, the trial court's general liability judgment will prevail if it is possible that the trial court could have found the evidence insufficient to prove incurred risk, the form of fault urged by Perdue Farms.

■ Incurred risk requires a "mental state of venturousness" and a "conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances." *Beckett v. Clinton Prairie Sch. Corp.*, 504 N.E.2d 552, 554 (Ind.1987). This defense "contemplates acceptance of a specific risk of which the plaintiff has actual knowledge." *Id.* Pryor stated that, to remove feed augers, he normally used a hand winch to avoid the strain of pulling and that he did not see anything unsafe about removing them by hand. He also noted that his supervisor had instructed him to remove au-

---

2. The statute states, in relevant part: " 'Fault' includes ... incurred risk." IND.CODE § 34-4-33-2 (1993).

3. Perdue Farms appears to agree. In urging that the trial court failed to make the required fault allocation, it states:

In this case, if the trial's [sic] court decision on the issue of liability is upheld, trial will be held only as to the issue of the amount of damages to be awarded. If a fault allocation is to be

made through this damage trial, this allocation could be made only following a re-litigation of all the fault issues involved in the liability determination trial. The obvious point of the agreed bifurcation of the trial [was] to get the liability and fault issues determined prior to the necessity of presenting the extensive expert testimony needed to establish the existence and amount of Pryor's damages.

Brief of Appellant at 30.

gers by hand to avoid damaging the auger. While Pryor often used the hand winch to avoid the strain of exertion, there is no evidence that he necessarily possessed a conscious acceptance of the specific risk of losing his footing and falling backward. It is thus possible that the trial court could have found that the evidence failed to prove the defense of contributory fault in the form of incurred risk. Combining this with the absence of any requests for findings of fact in this bench trial, there was no need for the trial court to make a separate finding attributing zero fault to the plaintiff.

In conclusion, because the trial court's general judgment can be sustained upon a legal theory consistent with the evidence introduced at trial, it is hereby affirmed.

SHEPARD, C.J., and SELBY and BOEHM, JJ., concur.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Justice, concurring in result.

I concur in the result of Justice Dickson's opinion. I write separately because the opinion uses language that appears to vary from the test for legal duty enunciated in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind.1991). *Webb v. Jarvis* requires that a court must balance the factors of relationship, foreseeability, and public policy. *Id.* at 995 ("[O]ur analysis must examine each of these three factors in order to determine if [defendant] owed [plaintiff] a duty."). In contrast, the opinion here says that, in determining whether a legal duty exists, a court "may ... consider" the relationship of the parties and "various other factors" including reasonable foreseeability of harm and public policy concerns.

While using different language, today's opinion in no way rejects the *Webb v. Jarvis* test, which I believe continues to provide a clear but not overly rigid framework for trial courts to use in conducting duty analysis. For some time now, it has provided a consistent and predictable set of rules for our law of duty. *See Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind.1996) (attorney for partnership's duty to individual partners); *Heck v. Robey*, 659 N.E.2d 498, 502 n. 3 (Ind.1995)

(paramedic's duty to accident victim); *Hooks SuperX v. McLaughlin*, 642 N.E.2d 514, 517 (Ind.1994) (pharmacist's duty to customer); *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind.1994) (city's duty to dispatch ambulance to residential fire); *Walker v. Rinck*, 604 N.E.2d 591, 594 (Ind. 1992) (physician's duty to patient); *Stump v. Commercial Union*, 601 N.E.2d 327, 332 (Ind.1992) (employer's workers' compensation insurance carrier's duty to employee).