**REBECCA SHAW, Individually, and for the Estate of Kayla Nicole Hughes, and Stephen Hughes, Appellants–Plaintiffs,**

v.

**LDC ENTERPRISES, Inc. d/b/a/ I & I Steakhouse, Lon Carrigan, Debra Carrigan, and one or more John Does, Appellees–Defendants.**

No. 23A05–0603–CV–154.

Court of Appeals of Indiana.

March 30, 2007.

---

Keith Johnson, The Johnson Law Firm, Terre Haute, IN, Larry James White, Smith, White, Sharma & Halpern Atlanta, GA, Attorneys for Appellants.

William W. Drummy, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, IN, Kimberly K. Vereb, Esther Joy Schwartz, Stellato & Schwartz, Ltd., Oakbrook Terrace, IL, Adam Hawkins, David S. Allen, Stellato & Schwarz, Ltd., Chicago, IL, Attorneys for Appellees.

## OPINION

MAY, Judge.

■ Kayla Hughes was killed in an automobile accident after she spent some time at I & I Steakhouse, a restaurant owned by LDC Enterprises. Her parents, Rebecca Shaw and Steven Hughes (collectively, "Shaw"), sued LDC alleging employees of the restaurant served alcohol to Kayla, who was sixteen at the time. LDC moved to dismiss three counts of the complaint on the ground they were governed by Illinois law, and the trial court granted the motion.[1] Shaw asserts on appeal Indiana law applies.[2]

---

1. Dépeçage is the process of analyzing different issues within the same case separately under the laws of different states. *Simon v. United States,* 805 N.E.2d 798, 801 (Ind. 2004). Indiana's choice-of-law rules do not permit dépeçage. *Id.* at 803. This appears to be the reason the counts were dismissed rather than analyzed under Illinois law by the Indiana court.

2. Shaw includes a second issue in the Statement of Issues section of her brief: the "judgment is contrary to law in that the evidence is without conflict and leads to a conclusion that is opposite to that of the lower court." (Br. of Appellants at 4.) That "issue" cannot be addressed because it reflects the standard for review of a *judgment* and that is not the standard by which we review a grant of a motion to dismiss. In her reply brief, Shaw

We reverse.[3]

## FACTS[4] AND PROCEDURAL HISTORY

■ The facts most favorable to Shaw, the non-moving party, are that on August 24, 2003, Kayla and some others went to the restaurant and were served alcohol. The restaurant is situated in Illinois close to the Indiana state line. Within an hour after leaving the restaurant, Kayla was involved in a fatal one-car accident in Indiana.

Shaw brought a complaint in the Fountain Circuit Court. It was amended to add Count VI for public nuisance under Indiana law, Count VII for nuisance under Ind.Code §§ 32–30–6–6, 7.1–2–6–1, and 7.1–2–6–2, and Count VIII to enjoin the restaurant from operating and from "allowing the continued conduct that has been outlined in this Complaint." (Appellants' App. at 202.) The complaint also alleged nuisance under Illinois law.[5]

■ LDC moved to dismiss Counts VI, VII, and VIII[6] on the ground Illinois law

states twelve issues, one of which is a statement of the correct standard of review.

3. We heard oral argument on December 15, 2006, in Indianapolis. We commend counsel for the quality of their oral advocacy.

4. We remind Shaw's counsel that a Statement of the Facts and Statement of the Case should not be argumentative. *County Line Towing, Inc. v. Cincinnati Ins. Co.,* 714 N.E.2d 285, 290 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 219 (Ind.2000). The Statement of the Facts Shaw's counsel offers us includes as "facts" such legal conclusions and argumentative statements as: "The Indiana legislative intent to provide damages and abatement against such [public nuisance] conduct will be thwarted by denying Shaw's claims," (Br. of Appellants at 7); "The court ... has omitted the necessary steps required to determine the choice of law," (*id.* at 5); and "The lower court bases its decision, in error [on the parties' arguments]." (*Id.*)

5. Shaw brought an Illinois nuisance claim, but she concedes in her reply brief that the Illinois dram shop statute would "bar the [Illinois] public nuisance claim." (Response Br. of Appellants at 14.) She is correct. Illinois has no common-law cause of action for injuries arising out of the sale or gift of alcoholic beverages, and its legislature has, through the dram shop act, preempted the field of alcohol-related liability. *Charles v. Seigfried,* 165 Ill.2d 482, 209 Ill.Dec. 226, 651 N.E.2d 154 (1995), *reh'g denied.*
Nor could the Illinois dram shop act offer Shaw any relief. It applies only to a "person who is *injured within this State.*" 235 ILCS

5/6–21 (emphasis supplied). *And see Graham v. General U.S. Grant Post No. 2665, V.F.W.,* 43 Ill.2d 1, 248 N.E.2d 657 (1969) (the act may not be applied extraterritorially to permit recovery for injuries inflicted outside of state; even though both parties involved in an out-of-state collision were Illinois residents and one motorist's intoxicated condition was brought about by sale of alcoholic beverages by Illinois dram shop operator, plaintiff could not recover under dram shop act).

6. In Count VIII, Shaw sought injunctive relief under Ind.Code § 32–30–6–8. LDC argues Illinois law governs Counts VI and VII; Count VIII must therefore be dismissed because the statute on which the injunctive remedy is premised is "a remedy for violations of *Indiana* statutory nuisance claims." (Response Br. of Appellees at 16) (emphasis in original).
Ind.Code § 32–30–6–8 includes no explicit restriction to Indiana claims. It states: "If a proper case is made, the nuisance may be enjoined or abated and damages recovered for the nuisance." Ind.Code § 32–30–6–7(a) provides:
An action to abate or enjoin a nuisance may be brought by any person whose:
(1) property is injuriously affected; or
(2) personal enjoyment is lessened; by the nuisance.
An Indiana court may, in certain situations, enjoin out-of-state actors. *See City of Gary ex rel. King v. Smith & Wesson Corp.,* 801 N.E.2d 1222, 1231 (Ind.2003) (allowing City's claim for injunctive relief against out-of-state gun manufacturers and sellers to go forward). Because we find the Indiana nuisance counts

should control the disposition of Shaw's action, and the trial court granted the motion. We accepted Shaw's interlocutory appeal.

## DISCUSSION AND DECISION

■ The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is *de novo.* *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). We do not defer to the trial court's decision because deciding a motion to dismiss for failure to state a claim involves a pure question of law. *Id.* That is, it does not require reference to extrinsic evidence, the drawing of inferences therefrom, nor the weighing of credibility for its disposition. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). The grant or denial of a motion to dismiss turns solely on the legal sufficiency of the claim and does not require determinations of fact. *Sims,* 757 N.E.2d at 1024.

Because an Indiana Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of a claim and not the facts supporting it, a complaint may not be dismissed for failure to state a claim on which relief may be granted unless it appears to a certainty, on the face of such complaint, that the complaining party is not entitled to any relief. *McQueen v. Fayette County Sch.*

*Corp.,* 711 N.E.2d 62, 65 (Ind.Ct.App. 1999), *trans. denied* 726 N.E.2d 310 (Ind. 1999). In ruling on a motion to dismiss for failure to state a claim, the trial court must view the complaint in a light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* The trial court may look to the complaint only, and well-pleaded material must be taken as admitted.

Viewing Shaw's complaint in that light, we find the Indiana counts should not have been dismissed.

### 1. The Choice–of–Law Analysis

■ The Indiana choice-of-law analysis involves multiple inquiries. As a preliminary matter, the court must determine whether the differences between the laws of the states are important enough to affect the outcome of the litigation. *Simon v. United States,* 805 N.E.2d 798, 805 (Ind. 2004). If such differences exist, the presumption is we will apply the traditional rule, *lex loci delicti* (the place of the wrong). *Id.* Under this rule, the court applies the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place. *Id.* In the case before us, LDC argues that is Illinois, where Kayla was served alcohol. Shaw argues it is Indiana, where Kayla was killed.[7]

survive, dismissal of Count VIII was also error.

7. The *lex loci delicti* presumption may be overcome if the place of the tort bears little connection to the legal action. *Simon v. United States,* 805 N.E.2d 798, 805 (Ind.2004). If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant. *Id.* We cannot say Indiana, where Kayla was a resident and where she was killed, was "insignificant" or "bears little connection" to the action.

See *Sommers v. 13300 Brandon Corp.,* 712 F.Supp. 702, 705 (N.D.Ill.1989), which involved an injury in Indiana that was allegedly

related to the service of liquor in Illinois: "Indiana has a strong interest in the events since a resident of its state was injured in Indiana. Indiana has an interest in both protecting the well-being of its residents and in ensuring that injured residents can continue to pay their creditors." The court noted the defendant tavern, like the defendant in the case before us, was "located near the Illinois–Indiana border. Thus, it would not be a surprise to defendant that some of its patrons travel in Indiana after drinking at the tavern. The application of Indiana law would not be unexpected or unpredictable." *Id.*

We accordingly need not further address whether the *lex loci delicti* presumption might

In *Simon*, the estates of individuals killed in the crash of a small private aircraft brought a wrongful death suit against the United States. The flight began in Pennsylvania, included an overnight stop in Ohio, and ended in Kentucky when the plane tried to land. The plane never flew through Indiana airspace. Two of the passengers lived in Pennsylvania and one lived in Georgia. The pilot lived in New Jersey but worked in Pennsylvania. The plane was owned by a Delaware-based subsidiary of a Pennsylvania corporation. The plane was hangared in Pennsylvania.

The pilot, relying on a chart published by the Federal Aviation Administration in Washington, D.C., sought clearance to complete a Simplified Directional Facility approach due to poor weather conditions. Air traffic controllers based in Indianapolis cleared the approach even though the instrumentation required for the landing at the Kentucky airport had not been operational for several years. While attempting to land, the plane struck a radio tower and crashed.

Because the conflict between the laws of Indiana and Pennsylvania was sufficient to affect the outcome of the litigation, the Court was obliged to determine which law to apply. It noted the presumption that the law of the place of the tort applies because in many cases the place of the tort will be significant and will be the place with the most contacts. *Id.* It then proceeded to determine the location of the tort, *i.e.*, where the last events necessary to make the United States liable occurred. Those acts, the publication of the inaccurate chart and negligence of the air traffic controllers, "occurred prior to the plane crash. Therefore the last event necessary to make the United States liable was the injury, which occurred when the plane crashed in Kentucky and the decedents

died." *Id.* at 806. Consequently, under *lex loci delicti*, Kentucky law presumably would apply.

However, the presumption was overcome because the place of the tort had little connection to the legal action. The negligence occurred in Indiana and the District of Columbia, and none of the victims or the parties were Kentucky residents. The plane flew over multiple states, and the crash might have occurred anywhere. "*[U]nlike in cases involving an automobile accident*, the laws of the state where the crash occurred did not govern the conduct of the parties at the time of the accident. Consequently, we conclude that the place of the tort was an insignificant contact in this case." *Id.* (emphasis supplied).

Because the place of the tort was insignificant to the action, the Court next considered what other contacts existed and evaluated them according to their relative importance to the litigation at hand. *Id.* "We apply the law of the state with the most significant relationship to the case." *Id.* It noted three factors that might be relevant: 1) the place or places where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) "the place where the relationship is centered." *Id.* These factors should not be applied mechanically, but are to be evaluated according to their relative importance to the particular issues before the court. *Id.* The Court noted the list is not comprehensive and other relevant factors may be considered.

The Court found the contacts "splintered"; the injury, the allegedly negligent conduct, and the plaintiffs' residences were all in different states.

have been overcome because the location of the tort was "insignificant."

The gravamen of this case is the allegedly negligent conduct. Consequently, the most important relevant factor is where the conduct causing the injury occurred because an individual's actions and the recovery available to others as a result of those actions should be governed by the law of the state in which he acts. *Id.* (footnote omitted).

The negligent conduct occurred in both Indiana and Washington, D.C. The Court determined the conduct in Indiana was more proximate to the harm.[8] The residence or place of business of the parties, "while important in cases involving family law or asset distribution, is not a particularly relevant contact in this case. People do not take the laws of their home state with them when they travel but are subject to the laws of the state in which they act." *Id.* at 807. The Court noted it was the conduct of the FAA and the air traffic controllers that was at issue, not the conduct of the plaintiffs. Finally, where the contact between the allegedly negligent party and the injured party is fleeting, there was no real relationship and therefore no place where that relationship could be "centered." *Id.* Therefore, the Court decided Indiana had a "more significant relationship with the case and, therefore, under Indiana choice-of-law rules, Indiana law would apply." *Id.*

■ The *Simon* analysis leads us to conclude Indiana law applies; the Indiana nuisance counts therefore should not have been dismissed.

## 2. Differences Between Illinois and Indiana Nuisance Law [9]

■ There are significant differences in the Illinois and Indiana law that might apply to the claims and defenses before us. The *lex loci delicti* presumption therefore arises.

In *Simon*, the parties argued either Indiana or Pennsylvania substantive law should be applied. Our Supreme Court first determined there was a true conflict between the laws of the two states because 1) Pennsylvania allowed joint-and-several liability and right of contribution, while Indiana did not; 2) unlike Pennsylvania, Indiana did not permit recovery for both wrongful death and survival damages; and 3) unlike Indiana, Pennsylvania damages could include the decedent's conscious pain

---

**8.** None of the parties argued the law of the District of Columbia should apply.

**9.** Shaw acknowledges the threshold question whether the differences between Indiana and Illinois law are important enough to affect the outcome of the litigation, but does not offer analysis of that question. Instead, she asserts the trial court erred because it "did not undertake an analysis of the difference between the state laws. It merely based its decision on argument without proper analysis." (Br. of Appellants at 9.) Shaw asserts "No analysis was made of the applicable law from either Indiana or Illinois. The court never inquired whether Illinois law provides a public nuisance remedy for the type of conduct complained about. The court never inquired whether Illinois provides an abatement remedy." (*Id.* at 10.)

Shaw's argument appears premised on the court's order, which granted the motion to dismiss but did not include findings, conclusions, or other explanation of the dismissal. As LDC correctly notes, the trial court was not obliged to do so, and Shaw is apparently asking us to presume trial court error from the silence of the order. We do not presume such error. *See, e.g., Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind.1997) ("In reviewing a general judgment, we must presume that the trial court correctly followed the law."). LDC notes both parties argued this issue to the trial court and it provides citations to the record verifying the issue was addressed. We accordingly decline to find trial court error on that ground.

and suffering from the moment of injury to the time of death. 805 N.E.2d at 805.

Illinois, unlike Indiana, has no common-law cause of action for injuries arising out of the sale or gift of alcoholic beverages; its legislature has, through the dram shop act, preempted the field of alcohol-related liability. *Charles*, 209 Ill.Dec. 226, 651 N.E.2d at 159. The Illinois dram shop act applies only to a "person who is *injured within this State*," 235 ILCS 5/6–21 (emphasis supplied), and Kayla was not. *And see Graham*, 248 N.E.2d at 661 (act may not be applied extraterritorially to permit recovery for injuries inflicted outside of state).

By contrast, an Indiana nuisance action may be brought against a dram shop and against an entity outside the state's borders. *See* Ind.Code § 7.1–2–6–1(a) ("public nuisance" includes a "place of any kind where ... [a]n alcoholic beverage of any type is sold ... in violation of law or ... [a] person is permitted to resort for the purpose of drinking an alcoholic beverage of any type in violation of law...." *And see City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1231 (Ind. 2003) (city could bring nuisance action against out-of-state gun manufacturers and distributors when it was alleged their activities caused harm to the city, financially and in terms of public safety, and to the city's residents). The differences between the laws of Illinois and Indiana are important enough to affect the outcome of the litigation.

3. *The Lex Loci Delicti Presumption*

■ Under this rule, the court applies the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place. *Id.* In the case before us, LDC argues it is Illinois—where Kayla was served alcohol. Shaw argues it is Indiana—where Kayla was killed.

No decisions were found addressing this specific question in the context of a nuisance action. However, where the issue is the choice between the law of the place where an allegedly wrongful act or omission took place and the law of the place where physical injury was inflicted, the general rule is that the "place of the tort" is the place where the injury or death was inflicted and not the place where the allegedly wrongful act or omission took place. *See generally* E.H. Schopler, Annotation, *What is Place of Tort Causing Personal Injury or Resultant Damage or Death, for Purpose of Principle of Conflict of Laws that Law of Place of Tort Governs*, 77 A.L.R.2d 1266, 1273 (1961).

This is in accord with the Restatement rule. Restatement (First) of Conflict of Laws § 377 provides the place of a wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place. "When a person causes another voluntarily to take a deleterious substance which takes effect within the body, the place of wrong is where the deleterious substance takes effect and not where it is administered." *Id.* cmt. a, illus. 2.

Despite this general rule, the authorities are not in agreement as to whether the place of the wrong for purposes of choice of law analysis is the place where intoxicating liquors are unlawfully sold or the place where, as a result of intoxication, a person causes injury. These decisions involve primarily dram shop laws and not nuisance laws.

A representative decision holding the place of injury or death is the place of the wrong is *Butler v. Wittland*, 18 Ill.App.2d 578, 153 N.E.2d 106 (1958). The court addressed whether an action could be maintained under the Illinois dram shop act when intoxication occurred as a result

of a sale of liquor in Illinois in violation of the Illinois act, but the plaintiff's injuries arose from a collision of automobiles, one of which was driven by the intoxicated person, that occurred in Missouri. That court ruled the place of the tort was Missouri. It noted intoxication alone does not give rise to a cause of action under the statute; it must be coupled with an act that causes injury. *Id.* at 108. It determined any liability was created not by the sale of the intoxicating liquor and the resulting intoxication, but rather arose when the automobile of the intoxicated person and that of plaintiff collided in Missouri. *Id.* at 110.

 In Count VI, Shaw alleged common-law nuisance, relying on the definition our Indiana Supreme Court articulated in *Smith & Wesson*, 801 N.E.2d at 1231:

a nuisance *is an activity* that generates injury or inconvenience to others that is both sufficiently grave and sufficiently foreseeable that it renders it unreasonable to proceed at least without compensation to those that are harmed. Whether it is unreasonable turns on whether the activity, even if lawful, can be expected to impose such costs or inconvenience on others that those costs should be borne by the generator of the activity, or the activity must be stopped or modified.

(Emphasis supplied.) While it is the "activity" that is the "nuisance," *i.e.,* the service of alcohol to Kayla in the case before us, the "essence" of a nuisance claim is the foreseeable harm unreasonably created by the defendant's conduct. *Id.* at 1235. The "foreseeable harm" to Kayla did not manifest itself until she had left Illinois and entered Indiana.

In Count VII, Shaw alleged nuisance under Ind.Code §§ 32–30–6–6 and 7.1–2–6–1. Nuisance is defined in Ind.Code § 32–30–6–6:

Whatever is:

(1) injurious to health;

(2) indecent;

(3) offensive to the senses; or

(4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

A public nuisance is defined in Ind.Code § 7.1–2–6–1(a):

The following are declared to be a public nuisance:

(1) A room, a house, a building, a boat, a structure, an automobile, other vehicle, or place of any kind where at least one (1) of the following occurs:

(A) An alcoholic beverage of any type is sold, possessed, manufactured, bartered, or given away in violation of law or a rule of the commission.

(B) A person is permitted to resort for the purpose of drinking an alcoholic beverage of any type in violation of law.

(2) A place where alcoholic beverages are kept for sale, barter, or gift in violation of law or in violation of a rule of the commission, and all alcoholic beverages and all other property kept in and used in maintaining a place.

(3) The business property of a person who knowingly or intentionally sells, possesses, manufactures, barters, or gives away alcoholic beverages in violation of law or a rule of the commission.

So, LDC notes, a nuisance might be a "place of any kind" or an "activity." But, LDC asserts, in either event it was, in the case before us, complete before Kayla left Illinois. This characterization of the nuisance statutes is consistent with the letter of the statutory law, but not its spirit: whether the nuisance is defined by statute

or the common law, its "essence" is the same—the foreseeable harm unreasonably created by the defendant's conduct. *Smith & Wesson*, 801 N.E.2d at 1235. As Kayla was foreseeably harmed in Indiana by LDC's conduct in Illinois, we hold the last act necessary to make LDC liable for nuisance was the injury in Indiana.

4. *Availability of Relief*

In *Sommers v. 13300 Brandon Corp.*, 712 F.Supp. 702 (N.D.Ill.1989), Sommers argued the Indiana Dram Shop Act applied to his action against a Chicago tavern. Under the common law of Illinois and the Illinois Dram Shop Act, he would have no claim for the injuries he sustained in an automobile accident in Indiana.[10] Shaw would likewise be without a remedy for Kayla's injuries if Illinois law is applied.

That court reviewed a number of decisions where courts were called on to decide which state's law to apply when an injury resulted in one state from the sale of alcohol in a different state. It noted the courts have been split as to whether to apply the law of the place of sale or the place of the accident, *id.* at 705, but found it significant that those decisions that have applied the law of the place of the accident were, like the case before us, cases where the law of the place of sale (here, Illinois) provided for no liability whereas the place of the accident (here, Indiana) provided a cause of action:

> [T]he modern trend has also been toward choosing the law that would impose liability. Since Indiana's [dram shop] statute applies to "any person who furnishes," not just to regulation of taverns, and since it is a codification of the common law, it is believed that Indiana would apply [the act] to sales outside Indiana and accidents in Indiana.

*Id.*

The court noted there is nothing in the Indiana dram shop act that indicates it is limited to sales in Indiana: "The statute simply refers to 'A *person* who furnishes an alcoholic beverage.'" *Id.* (*quoting* Ind. Code § 7.1–5–10–15.5(b)) (emphasis added by the *Sommers* court).

## CONCLUSION

The last event necessary to make LDC liable for its alleged wrong took place in Indiana with Kayla's death, and application of Illinois law would leave Shaw without a remedy. The substantive law of Indiana therefore applies. The counts in Shaw's amended complaint alleging nuisance under Indiana statutory and common law, and seeking injunctive relief should not have been dismissed. We reverse and remand.

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.

---

**10.** Shaw asserts the *Sommers* court "applied *lex loci delecti* [sic] and determined that Indiana common law would apply." (Response Br. of Appellants at 6.) In fact, that court explicitly stated *lex loci delicti* "is no longer the guiding principle in Illinois." 712 F.Supp. at 704. However, the court in *Sommers* followed Seventh Circuit and Illinois appellate decisions where those courts, applying *lex loci delicti*, determined the law of the state where the injury took place would be applied when the plaintiffs were injured by a patron of an Illinois bar.