## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 24 2020, 7:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Robert J. Nice
Tara L. Cragen
Hayleigh J. Neumann
The Nice Law Firm, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scott A. Pitcher, | March 24, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-PL-2175 |
| v. | Appeal from the Howard Circuit Court |
| Eugeurtos B. Zimmerman, Jr., | The Honorable James K. Muehlhausen, Special Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 34C01-1706-PL-531 |

**Mathias, Judge.**

[1] Scott Pitcher ("Pitcher") appeals from an order of the Howard Circuit Court awarding possession of a backhoe, damages for the loss of use thereof, and

attorney fees in favor of Eugeurtos Zimmerman, Jr. ("Junior"). Pitcher's arguments on appeal can be consolidated as:

I.     Whether, under a general judgment standard of review, the trial court's judgment was in error;

II.    Whether there was any other basis on which Pitcher's motion to correct errors should have been granted; and,

III.   Whether the matter of attorney fees is moot.

We affirm.

## Facts and Procedural History

This litigation involves the disputed ownership of two pieces of construction equipment: a Lull forklift ("the forklift") and a CASE 580-M backhoe ("the backhoe"). The forklift and backhoe were among Junior's construction business's inventory that was on the brink of repossession and sale by Community First Bank, which held a secured interest in Junior's equipment. To avoid the forced sale, Junior sought financial assistance from his brother, John Zimmerman. Community First agreed to assign ownership of the equipment to John upon John's payment of $120,000 to the bank. John took out a $100,000 loan from Chase Bank to do so, and Junior provided the remaining $20,000. John then leased the equipment to Junior for $2,000 per month, which allowed Junior to continue operating his business for a time. This occurred in early 2012.

[4]     In July 2013, Junior could no longer make payments to his brother and decided to find a buyer for the equipment. Junior contacted Pitcher d/b/a Fortune Companies as a potential buyer because Pitcher was also in the construction business. Junior and Pitcher had had prior business dealings. Pitcher agreed to help, and with John's approval, the men inventoried and set prices for the equipment in Junior's possession. The understanding between John, Junior, and Pitcher was that Pitcher would try to select equipment for purchase whose total value approximated the amount that John still owed to Chase Bank—at the time, about $75,000. Accordingly, Pitcher marked several items on the inventory list that he wished to purchase with his initials, "SP." Pitcher agreed to pay John $2,000 per month until the equipment was paid for in full.

[5]     The forklift and the backhoe were subsequently delivered by an associate of Junior's to a Fortune Companies worksite in Lafayette, Indiana. Pitcher made regular, monthly payments to John, and by January 2017, John had repaid his Chase debt in full, and Pitcher had fulfilled his end of the deal. When John received the last of Pitcher's payments, he created a bill of sale transferring ownership of the equipment to Pitcher. The bill of sale did not include the forklift or the backhoe, and Pitcher did not alert John to the fact that the items were omitted from the bill of sale.

[6]     The facts up to this point are undisputed. On June 6, 2017, Junior filed a complaint in the Howard Circuit Court seeking an order granting him immediate possession of the forklift and the backhoe. According to Junior, there was an oral lease agreement between himself and Pitcher in addition to

the purchase agreement between John and Pitcher. The lease agreement allegedly provided that Pitcher would pay Junior $2,000 per month for the use of the forklift and the backhoe on construction projects for which Pitcher's company was a subcontractor. Junior alleged that Pitcher breached the oral agreement by failing to make monthly lease payments and refusing to return the equipment. Junior's complaint sought relief based on breach of contract and posited the alternative theories of promissory estoppel, unjust enrichment, conversion, offense against property, and replevin. Junior subsequently filed a request for hearing.

[7] Pitcher responded on September 29, 2017, with an Indiana Trial Rule 12(B)(6) motion to dismiss for failure to join a party in interest, which Pitcher alleged was John, as the owner of the forklift and the backhoe, in the event Pitcher himself was not the owner. The trial court held a hearing on November 3, 2017, and heard testimony from Pitcher, Junior, Junior's business associate, and John. The trial court denied Pitcher's motion to dismiss, determining that John was not a party in interest. As to the forklift, the trial court denied Junior's claim for immediate possession thereof. The court scheduled further proceedings for February 2018 to determine which party was entitled to possession of the backhoe.

[8] Pitcher and his counsel failed to appear at the February hearing. The trial court continued the hearing to April 6, 2018, and awarded $1,000 in attorney fees to Junior. On April 24, Pitcher filed his answer to Junior's complaint with affirmative defenses and a motion for judgment on the pleadings. Junior

responded with a motion to strike Pitcher's motion for judgment on the pleadings and counterclaims.

[9] In May, the trial court scheduled a hearing for June 27, 2018, to consider all remaining matters and pending motions. At the June hearing, the trial court granted Junior's motion to strike in part and declined to rule on Pitcher's motion for judgment on the pleadings. The trial court then granted Junior's motion for immediate possession as to the backhoe and, because Pitcher had sold the backhoe, heard testimony regarding its fair market and rental value to determine what damages Pitcher owed Junior. The trial court's final order was entered on June 27, 2018, and read in operative part:

> Court finds Plaintiff to be the owner of the 580M backhoe and that Plaintiff is entitled to final possession thereof.
>
> Court finds Defendant sold the 580M backhoe and that Plaintiff shall recover $17,000 for the loss of the backhoe plus $6,500 for the loss of use for a total judgment of $23,500. Plaintiff is also awarded $340 attorney fees.
>
> Defendant is found to be the owner of the Lull [forklift] and entitled to final possession thereof.

Appellant's App. p. 8.

[10] Pitcher's motion to correct errors was denied after hearing. Pitcher filed a notice of appeal on September 10, 2018, and also sought a stay of further collection proceedings pending appeal. The trial court granted the stay on October 17, 2018. This appeal followed.

## I. *The trial court's order can be sustained under our general judgment standard of review.*

[11] Pitcher appeals from the denial of his motion to correct error. We generally review the denial of a motion to correct error for abuse of discretion. *Kornelik v. Mittal Steel USA, Inc.*, 952 N.E.2d 320, 324 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), *trans. denied*. Questions of law are reviewed de novo, and we owe no deference to the trial court's legal conclusions. *In re Guardianship of Phillips*, 926 N.E.2d 1103, 1107 (Ind. Ct. App. 2010).

[12] Neither party requested special findings and conclusions under Trial Rule 52(A), and the trial court did not designate any portion of its order as special findings and conclusions. In the absence of special findings, we apply a general judgment standard of review. *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind. 1997). Under this standard, we presume that the court correctly followed the law, and we do not reweigh the evidence or reassess the credibility of witnesses. *Id.* We will affirm if the judgment is "sustainable upon any theory consistent with the evidence." *Id.* In determining if the judgment is against the facts and circumstances before the court, we "may look both to other findings and beyond the findings to the evidence of record." *C.B. v. B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013), *trans. denied*.

## II. The trial court did not err in determining that the parties had no oral lease agreement.

[13] At least one of Pitcher's arguments on appeal alleges error in the trial court's consideration of whether an oral lease agreement for the forklift and the backhoe existed between Junior and Pitcher. *See* Appellant's Br. at 13. Junior's complaint sought immediate possession of the forklift and the backhoe based on breach of contract; he alleged that there was an oral agreement between him and Pitcher to lease the forklift and the backhoe. Pitcher's position was that the forklift and the backhoe were included in the items Pitcher bought from John and that no oral lease agreement existed. Furthermore, Pitcher argued that such an agreement would violate the statute of frauds. The statute of frauds states in relevant part:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> * * *
>
> (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

Ind. Code § 32-21-1-1(b).

[14] At the November 3, 2017, hearing, Junior maintained that Pitcher agreed to take possession of the forklift and the backhoe, collect rent for their use on a

construction job, and remit "a couple [] thousand" dollars to Junior each month. Tr. p. 49. Junior admitted that there was no written formalization of the agreement and that he knew the construction job was expected to last "a year to two and a half years." *Id.* John corroborated Junior's position and testified that the $2,000 monthly payment Pitcher owed to him was "discussed as being separate from the rent that [Pitcher] might be able to obtain for Junior." Tr. p. 60. John gave conflicting testimony regarding whether he was present for such a discussion about leasing the forklift and the backhoe. Pitcher testified that he never agreed to pay Junior for the lease of any equipment, whether verbally or in writing, and furthermore that such an agreement violated the statute of frauds because it could not be completed within one year.

[15] The trial court determined that the evidence presented did not establish the existence of an agreement that Pitcher would lease the forklift and the backhoe from Junior. Any request to disturb the trial court's order based on alleged error having to do with the existence of an oral lease agreement is simply a request to reweigh the evidence and judge witness credibility, which we will not do. *Perdue Farms, Inc.*, 683 N.E.2d at 240. And, even if the evidence did demonstrate a lease agreement had been reached, it failed to conform to the writing requirement and could not be enforced. Thus, the trial court did not err in determining that Junior was not entitled to possession of the forklift or the backhoe on his theory that Pitcher breached an oral agreement to lease the equipment from Junior.

### III. The controlling evidence establishing who was entitled to possession was the inventory list.

[16] Once the trial court determined that there was no oral lease agreement between the parties, the trial court divined that the primary question requiring resolution was whether the forklift or the backhoe, or both, were included in the sale of equipment from John to Pitcher. At the November 3 hearing, Pitcher produced Exhibit A, a handwritten inventory of equipment in Junior's possession, created by Junior and Pitcher, from which Pitcher decided what equipment to purchase. *See* Appellant's App. p. 57; Tr. p. 50. The document was crude but straightforward: it listed the equipment in Junior's possession, the estimated value for each piece of equipment, and a demarcation next to each item indicating if Junior would sell the item or if Pitcher would purchase the item. Though Exhibit A was produced by Pitcher, Junior averred that "[t]his document produced by Mr. Pitcher's counsel frankly may be the best corroborative evidence that we have[.]" Tr. p. 77. The trial court agreed, and thus the hearing proceeded with the common understanding that Exhibit A controlled as the best evidence of ownership because it was created close in time to the sale; both Junior and Pitcher participated in its creation; and there was no timely dispute as to its accuracy.

[17] Regarding the forklift, Junior's position was that Pitcher had not purchased it because the marking next to the forklift "doesn't look like the same SPs you see throughout." Tr. p. 77. Pitcher countered that the initials were his, and that he had purchased the forklift because it was "the most important piece to us in this

package . . . the most vital piece . . , we use every single day." Tr. pp. 71–72. The trial court found:

> [A]s to [whose] position on the [forklift] has more strength, I just believe the notation, which I believe to be an SP by the [forklift] on Exhibit [A] which was created July 19, 2013, is the most reliable evidence I have, and I'm going to find against you [Junior] on your quest for possession of the [forklift] based upon that.

Tr. p. 85.

[18] There was no error in the trial court's denial of Junior's request for immediate possession of the forklift based on this evidence, nor was there error in the trial court's later order finding Pitcher as the rightful owner of the forklift.

[19] Regarding which party was entitled to possession of the backhoe, the trial court again determined that Exhibit A, the handwritten equipment inventory, controlled. The inventory listed three backhoes for sale: a 580 Super K estimated at $10,000; a 580M estimated at $25,000; and a 580 Super M estimated at $35,000. *See* Appellant's App. p. 57. Pitcher's initials were noted next to only one of the backhoes: the 580 Super M. Junior claimed that he was entitled to immediate possession of the 580M, there being "no [marking] next to the 580-M at all," and the trial court agreed. Tr. p. 77. The trial court stated at the end of the November 3 hearing that "the backhoe goes to Junior[.]" Tr. p. 93. Pitcher did not object. Accordingly, Pitcher has waived for appellate review his claim that the trial court abused its discretion when it considered Exhibit A controlling evidence. *See Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990)

(stating preference for the general rule that waiver results if a timely objection to documents or exhibits is not raised at the trial court).

[20] The parties returned to the trial court on June 27, 2018. Pitcher verified that the backhoe at issue was the 580M. Pitcher did not produce evidence that he had purchased the 580M backhoe, and the trial court reaffirmed that Exhibit A—on which Pitcher's initials did not appear next to the 580M backhoe—was the best evidence. The trial court concluded that Junior was the rightful owner of the backhoe and entitled to possession thereof. For the same reasons we find that the trial court did not err in its disposition of the forklift, we find the trial court did not err in its disposition of the backhoe.

[21] Pitcher admitted that around January 2017, he sold the backhoe at issue to a third party for approximately $17,000. Accordingly, the trial court found that Junior was owed $17,000 in damages based on the sale of the backhoe, as well as $6,500 in damages based on loss of use of the backhoe for twenty-four months, the total owed to Junior amounting to $23,500. The trial court did not err in determining that Pitcher owned the forklift, that Junior owned the backhoe, and that Junior was owed $23,500 based on the sale and loss of use of the backhoe.

[22] While the trial court's order did not address the specific allegations in Junior's complaint, based on our review of the evidence before the trial court, we conclude that its judgment can be sustained under our general judgment standard of review. The trial court's judgment was based on one document that

both parties agreed was operative: the handwritten inventory of the equipment in Junior's possession where Pitcher indicated which items he wished to purchase. The trial court credited the testimony of the parties that this was the extent of the sale agreement, and we may not reassess the credibility of witnesses on appeal. Thus, because there was consensus about the inventory list, we cannot say that the trial court's decision declaring ownership based on what the inventory list revealed was contrary to law.

### *IV. There was no other basis on which Pitcher's motion to correct error should have been granted.*

[23] Pitcher also contends that the trial court's denial of his motion to correct error was an abuse of discretion because the trial court's original denial of his Trial Rule 12(B)(6) motion to dismiss for failure to name the real party in interest was incorrect. For the following reasons, the denial of Pitcher's motion to dismiss was not error; even if it was error, the doctrine of invited error bars Pitcher from now prevailing on the argument.

[24] Pitcher timely responded to Junior's complaint with a Trial Rule 12(B)(6) motion to dismiss for failure to name the real party in interest, disputing that Junior could properly assert a claim to the equipment because the underlying purchase took place between Pitcher and John. Pitcher's motion requested dismissal or, in the alternative, John's joinder to the action as the real party in interest. *Id.*

[25] Trial Rule 12 authorizes a party to present certain defenses; a motion to dismiss asserting Rule 12(B)(6) challenges the legal sufficiency of a complaint. *See* T.R. 12(B)(6) (allowing as a defense asserted by motion the plaintiff's "[f]ailure to state a claim upon which relief can be granted, which shall include failure to name the real party in interest under Rule 17"); *Trail v. Boys and Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 134 (Ind. 2006). Our supreme court has explained that a real party in interest "is the person who is the true owner of the right sought to be enforced." *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995). In ruling on such a motion to dismiss, "a court is required to take as true all allegations upon the face of the complaint and may only dismiss if the plaintiff would not be entitled to recover under any set of facts admissible under the allegations of the complaint." *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 814 (Ind. 2004). And in reviewing such motions, the trial court must draw all reasonable inferences in favor of the non-moving party. *Id.*

[26] Here, the basis of Pitcher's motion to dismiss was that John, not Junior, was the "true owner" of the ownership right that Junior sought to enforce. Appellant's App. pp. 22–23. At the November 3 hearing, John was called as a witness, and the trial court heard argument on whether John was a real party in interest. Junior presented the equipment lease agreement between himself and John that was created at the time John purchased the interest in Junior's equipment from Community First Bank. Tr. p. 58. John appeared at the initial hearing and testified, on direct and cross examination, about the effect of subsequent revision to the agreement:

[Junior's Counsel]: [T]he tail end of that document [Exhibit 4] reads, ['T]he ownership of all other equipment owned by [John d/b/a] Gaging Concepts and covered by the lease agreement is transferred to [Junior.'] Why was that paragraph there?

* * *

[John]: So, when I sold [] the equipment to Scott [Pitcher] then the . . . all of the other stuff I had no use for it, so I transferred all of that back to him [Junior]. There was other items on that list that Scott didn't buy, and I had no use for it and it was at Junior's disposable [sic], to do what he wanted with it.

[Junior's Counsel]: Did you basically give it to him?

[John]: Well I only bought the equipment to help him [Junior] so I was basically I had no need for the equipment and if Scott hadn't of [sic] stepped in and bought the equipment when that loan was paid off I would have transferred ownership, all of it back to Junior.

[Junior's Counsel]: Ok. And so we agree, you were paid off in full by Scott?

[John]: I was paid off in full.

* * *

[Pitcher's Counsel]: Exhibit 4, same question. The date you created it.

[John]: I can't tell you the date I created this one but I changed this when we, we revised the equipment lease when [Pitcher d/b/a] Fortune Companies bought the equipment.

[Pitcher's Counsel]: Back in '13?

[John]: That would have been, well it says here, '[B]y agreement of Gaging Concepts and [Junior d/b/a] C & Z Construction Management the lease agreement is cancelled as of [August 14, 2013]', and I believe that's the date that Scott bought the equipment.

Tr. pp. 58–59, 62.

[27] From this testimony, the trial court concluded that the basis for Pitcher's motion to dismiss—failure to join the real party in interest—was without merit. The trial court's decision to deny Pitcher's Rule 12(B)(6) motion to dismiss was not error.

[28] Furthermore, Pitcher unequivocally agreed with Junior when Junior argued that John was not the real party in interest under Rule 17. A party is barred by the doctrine of invited error from taking advantage on appeal of an error that he invited. *See Witte v. Mundy*, 820 N.E.2d 128, 133–34 (Ind. 2005); *Baxendale v. Raich*, 878 N.E.2d 1252, 1254 n.2 (Ind. 2008) (party who advised trial court that special findings were unnecessary was estopped from arguing on appeal that trial court erred in not entering findings); *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (State precluded from arguing on appeal that trial court erred in

merging convictions where trial court did so on the State's recommendation).

The following exchange occurred at the November 3 hearing:

> [Junior's Counsel]: [T]he testimony today has shown there is no indispensable party issue, no real party and [sic] interest issue. John has made it clear he doesn't have a dog in this fight in terms of ownership, he doesn't claim ownership. [B]y his documentation for what it is, [he] said you know ['O]nce there was a mechanism for me to get my money back and I got paid off, what was left, the residue went to my brother.['] So, it's Junior's claim and Junior is here asserting it.

> * * *

> [Court]: [S]o today, am I right guys? The only thing we were doing was deciding temporary possession on [Junior]'s complaint.

> [Junior's Counsel]: And, and Your Honor I think with testimony that we've had so far we, we know that one of two things happened, we know that John disposed of any interest in property and either went to [Pitcher] or it went to Junior [], so I would ask the Court to deny the motion to dismiss with regard to real party and [sic] interest because John's testimony is, [']I gave everything I didn't sell to Junior Zimmerman['] so Junior is the right plaintiff and Junior is here asserting his right toward the backhoe so we don't need to be distracted by this real party and [sic] interest issue, that can be moved on from.

> [Pitcher's Counsel]: **I'll agree with that** because even if you don't join [John] I can join him as a third-party complaint.

> [Court]: Yeah, I agree with [what] [Junior] said there. We're going to deny your motion to dismiss.[1]

Tr. pp. 78, 88 (emphasis added).

[29] When counsel for Junior characterized the dispute over ownership of the forklift and the backhoe as between Junior and Pitcher, counsel for Pitcher abandoned the Rule 12(B)(7) argument underlying his motion to dismiss. Thus, the doctrine of invited error barred Pitcher from belatedly reasserting the Rule 12(B)(7) motion to dismiss in subsequent responsive pleadings, and it bars him from now arguing that the trial court erred in denying the motion.[2]

[30] Pitcher also contends that the trial court erred in declining to rule on his Rule 12(C) motion for judgment on the pleadings. Under Rule 6(C), a defendant to a claim must reply within twenty days. The effect of failure to answer a claim is that the averments of the pleading will be deemed admitted.

---

[1] The trial court did not specify which Rule 12(B) subsection it found dispositive in denying Pitcher's motion, which cited both subsections (6) and (7) as grounds for dismissal. Rule 12(B)(7), failure to join a party for just adjudication under Rule 19, permits the court to "treat the absent party as not indispensable and allow the action to proceed without him." T.R. 19(B). It is unequivocally within the trial court's discretion to determine the indispensability of a party. *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trs. of Ball State Univ.*, 665 N.E.2d 914, 920 (Ind. Ct. App. 1996). Here, the trial court heard from John himself, who declaimed any interest relating to the subject of Junior's complaint. We are satisfied that there was no abuse of discretion in the trial court's determination under either Rule 12(B)(6), that John was not the real party in interest, or Rule 12(B)(7), that John was not an indispensable party.

[2] We note, too, that Trial Rule 14(A) would have allowed Pitcher to join John as a third-party complaint. The rule provides: "A defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. *The third-party plaintiff must file the third-party complaint with his original answer* or by leave of court thereafter with good cause shown." T.R. 14(A) (emphasis added). Pitcher did not attempt to join John by either method under Rule 14(A).

[31]    Ten months after Junior filed his complaint, on April 24, 2018, and five months after the trial court held an initial hearing at which it declined to grant Pitcher's Rule 12(B)(6) motion to dismiss and proceeded to hear argument on the remaining issues, Pitcher filed an answer asserting several affirmative defenses and seeking judgment on the pleadings under Trial Rule 12(C). On appeal, Pitcher argues that the trial court erred when it "failed to consider" his affirmative defenses and declined to rule on his Rule 12(C) motion for judgment on the pleadings, and thus that the trial court's denial of his motion to correct error was an abuse of discretion. Appellant's Br. at 28.

[32]    A motion for judgment on the pleadings pursuant to Rule 12(C) attacks the legal sufficiency of the pleadings. *Rivera ex rel. Rivera v. City of Nappanee*, 704 N.E.2d 131, 132 (Ind. Ct. App. 1998), *trans. denied*. The rule allows for "any party [to] move for judgment on the pleadings" after the close of pleadings but "within such time as not to delay the trial." T.R. 12(C). Motions filed pursuant to Rule 12 are subject to the time requirements of Trial Rule 6(C): "A responsive pleading required under these rules, shall be served within twenty [20] days after service of the prior pleading." Because Pitcher's Rule 12(C) motion was filed belatedly and after the trial court had already proceeded to hear argument on the substantive issues at the November 3 hearing, the trial court did not err in declining to rule on the motion.

[33]    Pitcher also argues on appeal that the trial court erred in imposing personal liability on him for payment of damages to Junior, rather than entering judgment against Fortune Companies, Pitcher's business. Appellant's Br. at 23.

Pitcher did not raise his objection to being named individually at the November 2017 hearing. Rather, at the June 2018 hearing, he renewed his Rule 12(B)(6) motion to dismiss—which had already been denied by the trial court—arguing that Fortune Companies, not Pitcher, should be named as the real party at interest. Because Pitcher raised this objection in an untimely manner and because he acquiesced to being named as the defendant, the trial court did not err in imposing judgment against Pitcher individually, and we decline to address the matter further.

### V. The matter of attorney fees is waived.

[34] Finally, Pitcher argues that the trial court's assessment of attorney fees against him is contrary to law. A trial court's decision to grant or deny attorney fees will not be disturbed absent an abuse of discretion. *Kovenock v. Mallus*, 660 N.E.2d 638, 643 (Ind. Ct. App. 1996), *trans. denied*. What constitutes reasonable attorney fees is a matter largely within the trial court's discretion. *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 634 (Ind. Ct. App. 1995). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Storm Damage Specialists of America v. Johnson*, 984 N.E.2d 660, 667 (Ind. Ct. App. 2013).

[35] Here, the trial court awarded $1,000 in attorney fees to Junior when Pitcher and his counsel failed to appear at the February 2018 hearing. At the November 3, 2017, hearing, the parties had agreed on a mutually convenient date in February, and Pitcher did not file any request for extension of time or otherwise

notify the trial court that he would be unable to appear at the February hearing. Sometime after the order granting $1,000 of attorney fees to Junior, Pitcher's counsel paid the award in full "out of [his] own pocket." Tr. p. 163. Junior's counsel confirmed that his office received the payment. By paying the fee as ordered and failing to timely object or request an evidentiary hearing pertaining to the award at the June 2018 hearing, Pitcher has waived the matter for our review on appeal. *See Verma v. D.T. Carpentry, LLC*, 805 N.E.2d 430, 433 (Ind. Ct. App. 2004) (when a party fails to make an objection to the trial court, it cannot raise the objection on appeal).

## Conclusion

[36] For all of these reasons, we hold that the trial court did not err in declining to grant the relief Pitcher sought.

[37] Affirmed.

Robb, J., and Pyle, J., concur.