SECOND DIVISION

No. 1-10-2178

| | | |
|---|---|---|
| JOSEPH P. MURPHY and PATRICIA MURPHY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 09 L 15806 |
| MANCARI'S CHRYSLER PLYMOUTH, INC., a | ) | |
| Corporation, | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

Plaintiffs, Illinois residents Joseph and Patricia Murphy, filed a personal injury action against defendant Mancari's Chrysler Plymouth, Inc. (Mancari's), an Illinois corporation, for an accident that occurred in Michigan.[1] The circuit court ordered that Michigan law apply to issues of liability and damages. On plaintiffs' motion, the court granted leave to file an interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994) and certified the following question for our review: "Whether Michigan law or Illinois law on the issues of liability and damages govern this case." We allowed plaintiffs' petition for interlocutory appeal. In answer to the court's question, we find that Illinois law governs the liability and damages issues in this case. We remand to the circuit court for further proceedings in light of this determination.

---

[1] Mancari's Chrysler Plymouth, Inc., is now Mancari's Chrysler Jeep, Inc.

Background

Plaintiffs are Illinois residents. They bought a Chrysler Sebring convertible automobile in Illinois from Mancari's, an Illinois corporation with its principal place of business in Illinois. In 2005, Joseph sustained permanent spinal cord injuries when the Sebring rolled over while he was driving it. The drive originated in Illinois but the accident occurred in Michigan, on the way to plaintiffs' weekend home in Michigan. The accident occurred when Joseph fell asleep at the wheel after having taken a sleeping pill at a rest stop in Michigan approximately an hour before he was to reach his Michigan home.

In 2006, plaintiffs filed a personal injury action in the circuit court of Cook County against Mancari's and DaimlerChrysler Corporation (Chrysler) (collectively defendants), case No. 06 L 9445.[2] Chrysler, the manufacturer of the vehicle, is a Michigan corporation with its principal place of business in Michigan. Chrysler designed, manufactured and tested the car in Michigan. Plaintiffs asserted strict liability claims against both Chrysler and Mancari's and a negligence claim against Mancari's. In May 2007, the court dismissed the strict liability claim against Mancari's pursuant to section 2-621 of the Illinois Code of Civil Procedure (735 ILCS 5/2-621 (West 2006)) because Mancari's was not the manufacturer of the Sebring and had certified that Chrysler was of the manufacturer. The court granted plaintiffs leave to file an interlocutory appeal

---

[2] DaimlerChrysler Corporation became Chrysler LLC and, subsequently, Old Carco LLC.

pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994). In *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768 (2008), we answered the certified question posed by the court and remanded the cause. The case went forward solely on the strict liability claim against Chrysler and the negligence claim against Mancari's.

In 2008, defendants moved for a determination of applicable law, arguing the law of the state of Michigan applied to issues of liability and damages. The court agreed and ordered that Michigan law apply to issues of liability and damages. It denied plaintiffs' motion to reconsider but granted plaintiffs' request for leave to file an interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994) and certified the following question for our review: "Whether Michigan law or Illinois law on the issues of liability and damages govern this case." We allowed plaintiffs' petition for interlocutory appeal in appeal No. 1-08-1999. The case was fully briefed and set for oral argument.

In April 2009, Chrysler filed for bankruptcy protection in the United States Bankruptcy Court. We ordered appeal No. 1-08-1999 stayed pending the outcome of the federal bankruptcy proceeding.

In December 2009, the circuit court granted plaintiffs' motion to sever their claims against Mancari's from their claims against Chrysler. It assigned plaintiffs' suit against Mancari's a new case number, No. 09 L 15806, and continued with the case. Plaintiffs' suit against Chrysler remained pending under the original case number.

Plaintiffs requested that the court determine whether Michigan or Illinois law

3

applied to its claims against Mancari's, given that the claims against Chrysler had been severed. Plaintiffs' complaint alleged that Mancari's, acting through its agents before the occurrence, was negligent in "failing to warn [plaintiffs] that their vehicle was not equipped with a sufficient roll bar or other devices to protect a driver from traumatic injuries in a reasonably foreseeable rollover." In July 2010, the court again determined that Michigan law applied to the liability and damages issues. It allowed plaintiffs leave to seek an interlocutory appeal and certified the same question for this court's review: "Whether Michigan law or Illinois law on the issues of liability and damages govern this case."[3]

We granted plaintiffs leave to voluntarily dismiss appeal No. 1-08-1999 and allowed their interlocutory appeal in the case against Mancari's only, appeal No. 1-10-2178.

Analysis

Choice-of-Law Determination

In *Townsend v. Sears, Roebuck and Co.*, 227 Ill. 2d 147 (2007), our supreme court decided the same choice-of-law question at issue here: whether Illinois or Michigan law would govern the liability and damages issues presented in a products liability and negligence action. *Townsend*, 227 Ill. 2d at 149-50 (Michigan residents

---

[3] Plaintiffs also requested that the court reinstate the strict liability count against Mancari's. The court stayed the request, on plaintiffs' motion, pending the outcome of this appeal.

injured in Michigan by allegedly defective riding lawn tractor bought in Michigan and manufactured in South Carolina by a New York corporation with its principal place of business in Illinois). *Townsend* sets forth the analysis we must undertake in deciding the certified question, and we, therefore, follow *Townsend*, except to the extent necessitated by the factual differences between the cases.

A choice-of-law determination is only required if a difference in law will affect the outcome of a case. *Townsend*, 227 Ill. 2d at 155. As *Townsend* explains, and the parties agree, conflicts exist between Illinois law and Michigan law regarding liability and damages, the same two areas of law at issue here, which could affect the outcome of a case. *Townsend*, 227 Ill. 2d at 156.

First, with regard to liability, there exists a conflict regarding the concept of fault because, while Illinois has a rule of strict liability in tort for product design defects, Michigan does not, imposing instead a pure negligence standard for defective design actions. *Townsend*, 227 Ill. 2d at 156. As a result, a defendant's inability to know or prevent a risk is not a defense in Illinois because he is strictly liable while in Michigan the same finding would preclude a negligence finding because the standard of care is established by other manufacturers in the industry. *Townsend*, 227 Ill. 2d at 156. Second, there exists a conflict regarding compensatory damages because, while Illinois does not have a statutory cap on compensatory damages for noneconomic injuries, Michigan imposes a $500,000 cap on noneconomic damages in product liability actions. *Townsend*, 227 Ill. 2d at 156. Plaintiffs point to assorted other differences

between Illinois law and Michigan law on damages and liability. Suffice it to say, the choice-of-law will have an impact on the outcome of the liability and damages issues in this case and a choice-of-law determination is, therefore, required.

### Significant-Relationship Test

Because Illinois is the forum state, Illinois choice-of-law rules control the choice-of-law determination. *Townsend*, 227 Ill. 2d at 155. Illinois follows the methodology set forth in the Restatement (Second) of Conflict of Laws (Second Restatement). Restatement (Second) of Conflict of Laws §6 (1971); *Townsend*, 227 Ill. 2d at 155. Pursuant to section 146 of the Second Restatement, the presumption is that the law to be applied in a case involving, as here, personal injury is the law of the state where the accident or injury occurred "unless, with respect to the particular issue[s], some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws §146 (1971); *Townsend*, 227 Ill. 2d at 164-65.

It is uncontested that the accident and injury occurred in Michigan. Therefore, we must presume, *ab initio*, that the law of Michigan applies to the liability and damages issues. Plaintiffs, however, assert that Illinois has a more significant relationship with the parties and dispute and Illinois law should apply to the issues.

The "significant relationship" test is not a self-contained analysis but rather "a description of the preferred outcome: to apply the law of the state that has the closest

relationship to the parties and the dispute." *Burlington Northern & Santa Fe Ry. Co. v. ABC-NACO*, 389 Ill. App. 3d 691, 700 (2009) (citing *Townsend*, 227 Ill. 2d at 159-60). To determine that relationship, as directed in section 146, we look to section 6(2) of the Second Restatement, which sets out the following "laundry list" of factors relevant to a choice-of-law determination:

"(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

Restatement (Second) of Conflict of Laws § 6(2) (1971); *Townsend*, 227 Ill. 2d at 159; *Burlington Northern & Santa Fe Ry. Co.,* 389 Ill. App. 3d at 700.

In deciding which state's law to apply in, as here, a tort case, the section 6(2) general principles must be considered along with the factual contacts or connecting factors set out in section 145 of the Second Restatement. *Townsend*, 227 Ill. 2d at 160-61; *Burlington Northern & Santa Fe Ry. Co.,* 389 Ill. App. 3d at 700, applying *Townsend*. Section 145 reiterates that "the rights and liabilities of the parties with

respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws §145(1) (1971). It then provides:

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws §145(2) (1971).

As *Townsend* explains, it makes no difference whether a court first looks at the section 6(2) general principles or at the section 145(2) contacts. *Townsend*, 227 Ill. 2d at 168. "In either case the Second Restatement's goal is the same - to ensure that a court is not merely 'counting contacts,' and that each contact is meaningful in light of the policies sought to be vindicated by the conflicting laws." *Townsend*, 227 Ill. 2d at 168. Looking to the unique facts before us, we first consider the four section 145

8

contacts and then the section 6 general principles.

Section 145 Contacts

*Place of Injury*

The first contact concerns the place where the injury occurred. Restatement (Second) of Conflict of Laws §145(2)(a) (1971). Michigan is the place where the injury occurred. However, in the context of a most-significant-relationship analysis, situations may exist where the place of injury is merely fortuitous and, therefore, not an important contact. *Townsend*, 227 Ill. 2d at 168.

Plaintiffs argue the place of injury is not that important here because it was fortuitous that the rollover occurred in Michigan. They assert it would have been more likely that the rollover occurred in Illinois because the Sebring was bought, serviced, licensed, garaged and primarily driven in Illinois. They assert the fact that the rollover occurred 39 miles inside the Michigan border was random, occurring as it did on a trip from Illinois, through northern Indiana, into Michigan. Defendant responds that it was not merely fortuitous that the rollover occurred in Michigan because it occurred during Joseph's trip to the home he had owned in Michigan for 27 years, a trip along the same route that he took every weekend to spend time with his family in Michigan.

There is no question that Joseph's presence in Michigan was not fortuitous. He was not in Michigan by accident. He was purposefully and voluntarily in Michigan, driving to his weekend home with the intention of staying there for several days, as he had done most weekends for the past three years. This does not mean, however, that

the rollover could not have happened in Michigan fortuitously. Granted, defendant asserts the rollover was due to the fact that Joseph fell asleep at the wheel and lost control of his car, *i.e.*, his contributory negligence caused the accident to happen in Michigan. But the cause of the rollover has not been determined. Joseph does not remember the accident at all, let alone falling asleep while driving. Further, it is entirely possible that there was another cause for the accident, a cause unrelated to Joseph's actions in Michigan, and that this cause would have resulted in a rollover in Illinois had Joseph been driving in Illinois at that time. The same type of accident and the same type of injuries could have just as easily happened in Illinois.

The point of plaintiffs' sole existent claim against Mancari's is that Mancari's negligently failed to warn plaintiffs about the lack of protection provided by the Sebring in the event of a rollover, not that the rollover occurred. In the context of this case, the place of injury is not an important consideration. See *Schulze v. Illinois Highway Transportation Co.*, 97 Ill. App. 3d 508, 510-11 (1981) (Illinois bus passengers were injured when bus owned by Illinois bus company overturned in Michigan on round trip between Illinois and Michigan; court held place of injury was fortuitous; "same type of accident — and the same injuries — could just as easily have occurred on an Illinois or Indiana highway"; "The fact that Michigan was the parties' destination is of no particular significance"); *Miller v. Hayes*, 233 Ill. App. 3d 847 (1992) (Illinois-domiciled college student attending university in Colorado died as a result of car accident in Colorado on drive back to school from Illinois after spring break; court held place of injury was

10

fortuitous because it could just as easily have occurred in any of the states through which the decedent and the driver, also an Illinois-domiciled college student studying in Colorado, traveled).

*The Place Where the Conduct Causing the Injury Occurred*

The second section 145 contact is the place where the conduct causing the injury occurred. Restatement (Second) of Conflict of Laws §145(2)(b) (1971). A court's section 145 analysis of injury-causing conduct "includes all conduct from any source contributing to the injury" and we, therefore, consider not only plaintiffs' assertion but Mancari's affirmative defenses. *Townsend*, 227 Ill. 2d at 169. Plaintiffs' negligence claim is that Mancari's was negligent because it failed to warn plaintiffs that the Sebring "was not equipped with a sufficient roll bar or other devices to protect Joseph from traumatic injuries in a reasonably foreseeable rollover." Plaintiffs assert the injury-causing conduct occurred principally in Illinois because it is in Illinois that they bought the car from Mancari's, Mancari's failed to warn them of the safety issue, and taking defendant's affirmative defenses into account, plaintiffs assumed their risk by buying a convertible. Plaintiffs assert the only relevant conduct that occurred in Michigan might be, per defendant's affirmative defenses, Joseph's negligent driving.

Defendant responds that the injury causing conduct occurred in Michigan. They argue that Joseph's contributorily negligent conduct, driving while under the influence of a sleeping pill, occurred in Michigan. They also assert plaintiffs' negligence claim calls into question the design, building and testing of the Sebring, all of which occurred

11

in Michigan and were performed by Chrysler, a Michigan corporation.  They suggest we must also take into consideration that plaintiffs' strict liability allegation that the car's design proximately caused Joseph's injuries may be revived.

The scope of our review pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 2, 1994) is strictly limited to the question certified by the circuit court.  *In re Detention of Anders*, 304 Ill. App. 3d 117, 120 (1999).  That question is: "Whether Michigan law or Illinois law on the issues of liability and damages govern this case."  "This case" is the case pending before the circuit court, the case consisting of a single count alleging negligence for failure to warn.  The strict liability claim is not before us.  The underlying basis for plaintiffs' failure-to-warn count, the existence of a defect, does not concern us and Chrysler's involvement with the alleged defect is, therefore, irrelevant.  The majority of the conduct underlying this case occurred in Illinois.  It is where Mancari's failed to warn plaintiffs of the defect, plaintiffs bought the Sebring and plaintiffs assumed the risk attendant to buying a convertible.  Joseph's alleged negligent driving, which is unrelated to the failure to warn, is the only contact with Illinois and thus of little consequence.

*The Domicile, Residence, Nationality, Place of Incorporation and*

*Place of Business of the Parties*

The third section 145 contact to be considered is "the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflict of Laws §145(2)(c) (1971).  Although plaintiffs have owned a

second home in Michigan for over 25 years, it is uncontested that their principle residence is in Illinois, Joseph worked in Illinois, and plaintiffs went to their Michigan house only on weekends and did not consider it their principle abode. They are clearly domiciled in Illinois. Mancari's is an Illinois corporation with its principal place of business in Illinois. This contact clearly favors Illinois. As stated previously, it does not, at this point, involve Chrysler in any way. This case is solely between two Illinois parties.

*Place Where the Relationship, If Any, Between the Parties is Centered*

The last section 145 contact to be considered is "the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws §145(2)(d) (1971). The relationship at issue is between plaintiffs and Mancari's and is clearly centered in Illinois where plaintiffs bought the Sebring from Mancari's in Illinois and Mancari's failed to warn them of the alleged defect. This contact favors Illinois.

Considered together, the section 145 contacts seem to suggest that Illinois has a more significant relationship to the action and the parties than does Michigan. However, "counting contacts" is not the extent of our analysis. *Townsend*, 227 Ill. 2d at 169. We must also consider them in light of the general principles embodied in section 6. *Townsend*, 227 Ill. 2d at 169.

Section 6 Principles

Following *Townsend*, we need not conduct a detailed analysis of all seven of the

section 6(2) general principles in this, a personal injury action. *Townsend*, 227 Ill. 2d at 169-70. Pursuant to the commentary to section 145, we need not consider in detail sections 6(2)(d), the protection of justified expectations, or 6(2)(f), certainty, predictability and uniformity of result, because they are only minimally implicated in a personal injury action arising from an accident. *Townsend*, 227 Ill. 2d at 169-70 (citing Restatement (Second) of Conflict of Laws §145, Cmt. b, at 415-16 (1971)). Similarly, because the needs of the interstate and international systems are only minimally implicated in a personal injury action, we need not perform a detailed analysis of section 6(2)(a). *Townsend*, 227 Ill. 2d at 170. Lastly, because section 6(2)(g), the ease in the determination and application of the law to be applied, "yields no discernible advantage to Illinois law over Michigan law" in this case, we need not consider this principle in detail either. *Townsend*, 227 Ill. 2d at 170. This leaves us to consider, with respect to the identified conflicts between Michigan and Illinois law in the areas of liability and damages, the remaining three section 6(2) general principles: section 6(2)(b), the relevant policies of the forum; section 6(2)(c), the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue; and section 6(2)(e), the basic policies underlying the particular field of law. *Townsend*, 227 Ill. 2d at 170.

*Townsend* examines each of the conflicts (liability and compensatory damages for noneconomic injuries) in light of the three above-named principles and comes to the conclusion that, "[c]onsidering the policies and interests of Michigan and Illinois, and of

14

the field of tort law, *** Illinois' relationship to [the] case is [not] so pivotal as to overcome the presumption that Michigan, as the state where the injury occurred, is the state with the most significant relationship." *Townsend*, 227 Ill. 2d at 170. *Townsend* held both Illinois and Michigan had an equally legitimate interest in having its tort rule applied to the conflicting issues in that case. *Townsend*, 227 Ill. 2d at 174-75. The same state law conflicts and type of action (a personal injury resulting from a defective product) at issue in *Townsend* are at issue here. However, the holding in *Townsend* does not mandate that Michigan law applies in this case. The factual differences between *Townsend* and this case warrant a different conclusion.

In *Townsend*, a child was injured when his father ran over his leg with a riding mower. The accident happened in Michigan, in the garden of the family's home; the plaintiffs (the boy and his mother) were residents of Michigan; the mower was bought from a Sears store in Michigan; Sears' principal place of business was in Illinois; and the mower was manufactured in South Carolina. The *Townsend* plaintiffs sued Sears, stating a strict liability claim for the defective design of the mower and a negligence claim for Sears' failure to warn plaintiffs of the defect.

Unlike the case at bar, the strict liability claim in *Townsend* was not dismissed. The *Townsend* court had to consider the choice-of-law issue in light of both the failure-to-warn claim and the design defect claim, thus bringing in entirely different considerations than at issue here, such as where the allegedly defective item was designed and manufactured and who manufactured it. As stated above, those

15

considerations are not relevant here because plaintiffs' sole claim is for failure to warn. We are only concerned with where the alleged wrongful conduct, Mancari's failure to tell plaintiffs that the car lacked rollover protection, occurred. Whether there actually was a defect in the car and how that defect came about is entirely irrelevant at this stage of the proceedings.

Further, in *Townsend*, even putting the strict liability claim against Sears aside and looking solely to the section 145 contacts in the failure-to-warn context, the Michigan contacts clearly outweighed the Illinois contacts. The accident happened in Michigan, during the usual course of using the mower at the plaintiffs' home in Michigan, the mower was bought in Michigan and the failure to warn occurred in Michigan. The only contact with Illinois was that Sears, the seller, had its principal place of business in Illinois. Taking into account the differing policies regarding liability and damages between Illinois and Michigan, both states' interests in protecting their citizens by applying their own laws and the lack of any significant relationship between Illinois and the action as shown by the section 145 contacts, the *Townsend* court could clearly find that Michigan law applied.

Here, in contrast, the section 145 contacts favor Illinois. The domicile and place of business of the parties are in Illinois, the conduct causing the injury occurred in Illinois and the relationship between the parties is centered in Illinois. The only contacts with Michigan are that the injury occurred there, which was merely a fortuitous occurrence, and Joseph's alleged contributory negligence in driving/falling asleep

16

occurred there. Unlike *Townsend*, this is a case involving an Illinois plaintiff allegedly injured by an Illinois defendant in Illinois. To paraphrase our supreme court in *Esser v. McIntyre*, 169 Ill. 2d 292 (1996), the interest of Illinois in providing a remedy for Illinois residents who have been injured by another Illinois resident outweighs Michigan's interest in limiting tort recoveries. *Esser*, 169 Ill. 2d at 300. Although both Illinois and Michigan had contacts with the action, Illinois has the most significant relationship to the occurrence and the parties, especially considering Illinois's interest in providing tort remedies to its injured citizens. See *Esser*, 169 Ill. 2d at 301. Illinois's more significant relationship to the incident and stronger interest in having its laws apply operate to override the strong presumption that the law of Michigan governs the issues in the case. We, therefore, answer the certified question as follows: Illinois law governs the issues of liability and damages in this case.

Plaintiffs assert that Mancari's is judicially estopped from denying the application of Illinois law because it used Illinois law (735 ILCS 5/2-621 (West 2008)) to defeat plaintiffs' strict liability claim. Given our determination that Illinois law applies, we need not address this argument. We remand to the circuit court for further proceedings in light of our answer to the certified question.

Certified question answered; cause remanded.

17

1-10-2178

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

JOSEPH P. MURPHY and PATRICIA MURPHY,

     Plaintiffs-Appellants,

v.

MANCARI'S CHRYSLER PLYMOUTH, INC., a Corporation,

     Defendant-Appellee.

No. 1-10-2178

Appellate Court of Illinois
First District, Second Division

March 31, 2011

JUSTICE KARNEZIS delivered the opinion of the court.

CONNORS and HARRIS, JJ., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Jeffrey Lawrence, Judge Presiding.

For APPELLANTS:  Pfaff & Gill, Ltd., of Chicago (Bruce R. Pfaff, of counsel)

For APPELLEE:  Swanson, Martin & Bell, LLP, of Chicago (Brian W. Bell, Catherine Basque Weiler and Mario M. Iveljic, of counsel)