# FOR PUBLICATION



**FILED**

Jul 22 2014, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**ROSS E. RUDOLPH**
**MAX E. FIESTER**
**KYLE R. RUDOLPH**
Rudolph Fine Porter & Johnson, LLP
Evansville, Indiana

**KEVIN C. SCHIFERL**
**LUCY R. DOLLENS**
**TIMOTHY L. KARNS**
Frost Brown Todd, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**MATT PARMENTER**
**DAVID G. HATFIELD**
**MONICA C. GILMORE**
Parmenter Hatfield & Gilmore, LLP
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES K. MELTON, PERDUE FOODS, LLC f/k/a PERDUE FARMS INCORPORATED and FPP BUSINESS SERVICES, INC. f/k/a PERDUE BUSINESS SERVICES, INC., | ) ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 14A01-1308-CT-356 |
| CHAD STEPHENS, Guardian of the Person and Estate of STACY S. STEPHENS and CHAD STEPHENS, | ) ) ) ) | |
| Appellees-Plaintiffs. | ) ) ) ) | |
| JAMES K. MELTON, PERDUE FOODS, LLC f/k/a PERDUE FARMS INCORPORATED and FPP BUSINESS SERVICES, INC. f/k/a PERDUE BUSINESS SERVICES, INC., | ) ) ) ) | |

|  |  |  |
|---|---|---|
| Third Party Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| KNOX COUNTY EMS, INC., | ) ) | |
| Third Party Defendant. | ) ) | |

APPEAL FROM THE DAVIESS CIRCUIT COURT
The Honorable William E. Weikert, Special Judge
Cause No. 14C01-1106-CT-259

**July 22, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellants-Defendants, James K. Melton (Melton), Perdue Foods, LLC f/k/a/ Perdue Farms Incorporated (Perdue), and FPP Business Services, Inc. f/k/a/ Perdue Business Services, Inc. (FPP Business) (collectively, Appellants), appeal the trial court's findings of fact and conclusions thereon determining that the substantive laws of the State of Illinois apply to a motor vehicle collision which occurred in the State of Illinois between residents of the State of Indiana.[1]

We affirm.

ISSUE

---

[1] We held oral argument in this case on June 24, 2014 at the Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel of both parties for their excellent advocacy.

Appellants raise one issue on interlocutory appeal, which we restate as: Whether the trial court properly held that Illinois substantive law is applicable to a collision which occurred in Illinois between two Indiana residents after considering the choice of law factors delineated in *Hubbard Manufacturing Co., Inc. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987).

FACTS AND PROCEDURAL HISTORY

The underlying lawsuit arose out of a motor vehicle collision between Appellees-Plaintiffs, Stacy S. Stephens (Stacy) and Chad Stephens (Chad) (collectively, Stephens)[2] and Melton at the intersection of U.S. 50 and County Road 900 East in Lawrence County, Illinois. Stacy, a resident of the State of Indiana, was within the course and scope of her employment with Knox County EMS of Vincennes, Indiana, and Melton, also a resident of the State of Indiana, was within the course and scope of his employment with Perdue. Perdue, a Maryland corporation and registered to do business in Illinois, is a wholly owned subsidiary of FPP Business.

At the time of the accident, Melton had been employed by Perdue for approximately 14 years as a commercial motor vehicle (CMV) driver and had made deliveries to Perdue's poultry farms in Illinois at least once or twice a week for each of the past 14 years. Both individuals were making roundtrips that originated in Indiana and which were designed to return them to their respective places of employment when their

---

[2] Although the caption of the Briefs read "Appellees-Plaintiffs, Chad Stephens, Guardian of the Person and Estate of Stacy S. Stephens, and Chad Stephens," during the pendency of this appeal we granted the motion of substitution, filed by Chad Stephens, as Guardian, to substitute him with the real party in interest, Stacy S. Stephens.

vehicles collided in Illinois. Although Melton made regular deliveries from Perdue's feed mill in Washington, Indiana to its operations in Illinois, this was the first time Stacy had travelled to Bridgeport, Illinois at the direction of her employer to transport an Illinois patient to an appointment in Indiana.

Melton, in a semi tractor-trailer, travelled west on U.S. 50, which has a posted speed limit of 50 mph, at a speed of 58 mph. He was behind the 2006 Ford Fusion, driven by Stacy, when Stacy began to slow the car several hundred feet from the intersection in anticipation of making her turn. She had nearly completed her left turn onto County Road 900 East when Melton collided into her vehicle. Melton contends that he was attempting to pass Stacy at the time of impact and claims that Stacy failed to signal her turn as she approached the intersection. He was issued a citation for passing within 100 feet of an intersection, which was adjudicated in the Lawrence Circuit Court, Lawrence County, Illinois.

On June 9, 2011, the Stephens filed a Complaint against Melton and Perdue, alleging negligence by Melton in the operation of the tractor-trailer. Specifically, they contend that:

> a) [Melton] drove his vehicle to the left side of the center of the roadway in an attempt to overtake and pass the vehicle being operated by [Stacy] when approaching within 100 feet of and while traversing the intersection of U.S. 50 and County Road 900 East in the County of Lawrence, State of Illinois in direct violation of 625 ILCS 5/11-706;
>
> b) [Melton] drove his vehicle to the left of center of the roadway while attempting to overtake and pass the vehicle being driven by [Stacy] and in doing so interfered with the safe operation of the vehicle being operated by [Stacy] in direct violation of 625 ILCS 5/11-705;

4

c) [Melton] failed to reduce the speed of his vehicle so as to avoid colliding with the vehicle being driven by [Stacy] in direct violation of 625 ILCS 5/11-601;

d) [Melton] drove his vehicle at a speed which was in excess of that which was reasonable and prudent under the conditions in direct violation of 625 ILCS 5/11-601;

e) [Melton] negligently failed to keep his vehicle under control at all times;

f) [Melton] negligently failed to keep a reasonable lookout for the vehicle being operated by [Stacy].

(Appellant's App. p. 45). In addition, the Stephens claimed that, as a result of Melton's negligence, Chad suffered a loss of consortium.

On February 23, 2012, the Stephens filed an Amended Complaint, reasserting the negligence claims and adding a new claim against Perdue, which specified:

a) [Perdue] negligently failed to train [Melton] in the proper use and operation of a commercial motor vehicle;

b) [Perdue] negligently failed to supervise [Melton] while operating the commercial motor vehicle they provided to him;

c) [Perdue] promulgated policies which encouraged its employees who operated motor vehicles to exceed the posted speed limit;

d) [Perdue] promulgated policies which encouraged its employees who operated commercial motor vehicles to drive at a speed that was in excess of that which was reasonable and prudent under the conditions.

(Appellant's App. pp. 53-54). In addition, Chad also asserted a loss of consortium claim against Perdue.

On July 20, 2012, Appellants filed their motion to determine applicable law, requesting the trial court to apply Indiana's substantive law to the instant cause, in adherence to our supreme court's decision in *Hubbard Manufacturing Co., Inc. v.*

5

*Greeson*, 515 N.E.2d 1071 (Ind. 1987). On August 2, 2012, the Stephens responded to the motion.

On August 27, 2012, the Stephens filed a Second Amended Complaint, amending their contentions against Melton and Perdue, and adding new, direct claims against FPP Business. With respect to Melton and Perdue, the Stephens added that "[Melton] drove a commercial motor vehicle in violation § 391.41(a)(1)(I) of the Federal Motor Carrier Safety Regulation when he was not properly medically certified as physically qualified to do so." (Appellant's App. p. 102). The Stephens' new negligence claim against FPP Business rests upon the specific contentions that:

a) [FPP Business] negligently failed to train [Melton] in the proper use and operation of a commercial motor vehicle;

b) [FPP Business] negligently failed to supervise [Melton] while operating the commercial motor vehicle provided to him by [Perdue];

c) [FPP Business] promulgated policies which encouraged the employees of [Perdue] to operate commercial motor vehicles at a speed in excess of the posted speed limit;

d) [FPP Business] promulgated policies which encouraged the employees of [Perdue] who operated commercial motor vehicles to drive at a speed that was in excess of that which was reasonable and prudent under the conditions.

(Appellant's App. p. 107). As with the previous Complaints, Chad also added a loss of consortium claim against FPP Business.

On March 27, 2013, the trial court conducted a hearing on Appellants' motion to determine applicable law. Thereafter, on June 4, 2013, the trial court issued its findings

6

of fact and conclusions thereon, holding that the substantive law of Illinois is applicable to the facts at hand.

Two days later, on June 6, 2013, the Stephens filed a Third Amended Complaint. Besides reiterating the allegations included in the previous Complaints, the Stephens added a claim for punitive damages against Appellants. With respect to Melton, the Stephens asserted:

2. That [Melton] knew that he had obstructive sleep apnea from May 22, 2009 through the time of the motor vehicle collision[.];

3. That at the time of the collision [] [Melton], wantonly, maliciously, oppressively, or willfully operated a commercial motor vehicle while his ability to do so was impaired as a result of untreated severe obstructive sleep apnea.

4. That at the time of the collision, [] [Melton], operated a commercial motor vehicle while his ability to do was impaired as a result of untreated severe obstructive sleep apnea in reckless disregard or indifference to the health and safety of others, including [] [Stacy].

5. That at all times herein and in the months and years leading up to the date of the collision [] [Melton] engaged in conduct that constituted intentional, willful or wanton deceit in order to obtain or maintain his status with a commercial driver's license and employment with [Perdue] by providing the medical examiners who performed his fitness determination examinations false, incomplete, or inaccurate information concerning his health history or failed to provide them pertinent information concerning his health history.

6. That the conduct of [Melton] [] constituted wanton, malicious, oppressive, or willful misconduct or constituted a reckless disregard or indifference to the health and safety of others, including [Stacy].

7. That the conduct of [Melton] constitutes such conduct for which punitive damages should be assessed and awarded at the time of the trial of this cause by the trier of fact.

7

(Appellant's App. pp. 269-70). A similar claim against Perdue and FPP Business is based on the particular assertions that:

> e) [Perdue] allowed [Melton] to operate a commercial motor vehicle when he was not medically qualified to do so in contravention of 49 CFR § 392.3;
>
> f) [Perdue] failed to develop or implement policies, programs or procedures to identify, test and remove from service those commercial motor vehicle drivers with signs, traits and symptoms of obstructive sleep apnea, including [Melton];
>
> g) [Perdue] failed to train its commercial motor vehicle drivers, including [Melton] concerning the hazards of operating a commercial motor vehicle with untreated sleep apnea;
>
> h) [Perdue] failed to train the medical examiners who performed fitness examinations for its commercial motor vehicle drivers of the signs, traits and symptoms of obstructive sleep apnea.

(Appellant's App. pp. 271-72).

In their Answer to the Third Amended Complaint, Appellants denied any negligence in training, supervision, and screening Melton for obstructive sleep apnea. Additionally, they also alleged that Stacy should be allocated fault for certain violations of the Illinois Vehicle Code-Rules of the Road.

In light of this Third Amended Complaint, the Appellants filed a renewed motion to determine applicable law on June 28, 2013. The following month, on July 19, 2013, the trial court denied Appellants' renewed motion, incorporating into its Order the trial court's prior June 4, 2013 findings of fact and conclusion thereon and holding the Illinois' substantive law applicable to the facts before the court. At the same time, the

8

trial court certified its Order for interlocutory appeal, which this court subsequently accepted on September 27, 2013.

Additional facts will provided as necessary.

DISCUSSION AND DECISION

This interlocutory appeal is limited to the parties' dispute concerning the substantive law applicable to the instant case. Although relying on the same set of cases—*Hubbard* and *Simon v. U.S.*, 805 N.E.2d 798 (Ind. 2004)—both parties reach a different result in applying Indiana's choice of law rules. Based on these principles, Appellants argue for the application of Indiana substantive law, while the trial court concluded, and the Stephens agree, that Illinois substantive law governs the cause.

I. *Standard of Review*

Indiana Trial Rule 52(A) provides that "[o]n appeal of claims tried by the court without a jury . . . the court on appeal shall not set aside the findings or judgment unless clearly erroneous[.]" The court engages in a two-tiered standard of review when applying this standard. *Burk v. Heritage Food Serv. Equip., Inc*., 737 N.E.2d 803, 811 (Ind. Ct. App. 2000). First, we consider whether the evidence supports the findings, construing these findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* However, here, the trial court did not conduct an evidentiary hearing on Appellants' renewed Motion to Determine Applicable Law. Therefore, to the extent the

9

trial court's factual findings are based on a paper record, this court conducts its own *de novo* review of the record. *Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n*, 758 N.E.2d 34, 37 (Ind. 2001).

## II. *Indiana's Choice of Law[3]*

Rules about the choice of law are among the few fields still dominated by judge-made doctrine and choosing the applicable substantive law for a given case is a decision

---

[3] Appellants spent the major part of their Brief attempting to persuade us that an anomalous result would ensue if Illinois law is applied to the instant facts. Relying on the Illinois precedent established in *Murphy v. Mancari's Chrysler Plymouth, Inc*., 948 N.E.2d 233 (Ill. Ct. App. 2011), and construing Illinois choice of law rules, Appellants suggest that Indiana law should be applied to the collision. Appellants maintain that applying Illinois' substantive law would create an anomaly as the forums bordering Indiana would not reach a similar result.

However, this cause was filed in Indiana and pursuant to Indiana's choice of law rules, the starting point is Indiana law—not Illinois law. *See Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071 (1987) (Indiana courts apply Indiana choice of law rules in determining which state's substantive laws apply to the facts of the cases pending in Indiana). In *Hubbard*, our supreme court recognized the danger of an anomalous result and proposed a modified choice of law test. Specifically, the *Hubbard* court noted

> The historical choice-of-law rules for torts, like contracts, was *lex loci delicti commissi*, which applied the substantive law where the tort was committed. The tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place. Rigid application of the traditional rule to this case, however, would lead to an anomalous result. Had plaintiff Elizabeth Greeson filed suit in any bordering state the only forum which would not have applied the substantive law of Indiana is Indiana. To avoid this inappropriate result, we look elsewhere for guidance.
>
> Choice-of-law rules are fundamentally judge-made and designed to ensure the appropriate substantive law applies. In a large number of cases, the place of the tort will be significant and the place with the most contacts. In such cases, the traditional rules serves well. A court should be allowed to evaluate other factors when the place of the tort is an insignificant contact.

*Hubbard*, 515 N.E.2d at 1073. (internal references omitted).

Thus, viewed within the *Hubbard* context, it is clear that our supreme court already took into account the possibility of an anomalous result by re-defining the choice of law test and ameliorating the harsh effects of the rigid application of the *lex loci delicti. See also Castelli v. Steele*, 700 F. Supp. 449, 453 (S.D. Ind. 1988) (In *Hubbard*, the supreme court "found it appropriate to slightly modify the traditional choice of law rules for torts to ensure that 'anomalous result[s]' are not reached in certain instances."). As such, *Hubbard* does not require a separate 'anomalous investigation' as proposed by Appellants.

Moreover, Appellants reach this 'anomalous result' by applying the choice of law test adopted by the Restatement (Second) of Conflict of Laws. *See Murphy*, 948 N.E.2d at 236. Our supreme court explicitly rejected the Restatement test in *Simon* as "an unattractive path." *Simon*, 805 N.E.2d at 804.

made by the courts of the state in which the lawsuit is pending. In 1987, our supreme court issued *Hubbard*, its seminal case on Indiana's choice of law jurisprudence. Since then, *Hubbard* and its progeny have dominated this state's choice of law landscape.

In *Hubbard*, our supreme court advocated a multiple step inquiry to determine Indiana's choice of law framework in tort cases. As a preliminary premise, the trial court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Hubbard*, 515 N.E.2d at 1073. If such a conflict exists, the presumption arises that the traditional *lex loci delicti* rule—the place of the wrong—will apply. *Id*. Under this initial step, the trial court applies the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id*.

In a large number of cases, the place of the tort will be significant and the place with the most contacts. *Id*. In those cases, the traditional rule serves well. However, this presumption is not conclusive. *Id*. When the place of the tort is an insignificant contact, then the trial court should be allowed to evaluate other factors. *Id*. In these instances, where the place of the tort bears little connection to the legal action, our supreme court allows the consideration of factors that may be more relevant, such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered. *Id*. at 1073-74.

In *Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004), the court clarified the additional contacts which may be considered when the location of the tort is deemed insignificant, noting that "[t]hese factors are not an exclusive list nor are they necessarily

relevant in every case. All contacts should be evaluated according to their relative importance to the particular issues being litigated." *Id.* This litigation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs. *Id.*

Because both parties agree—and we concur—that the distinction between Indiana's and Illinois' substantive law are important enough to affect the outcome of the litigation, we will next turn to the *lex loci delicti* step of the *Hubbard* inquiry.

A. *Lex Loci Delicti*

Under this presumption, the court applies the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place. *Shaw v. LDC Enterprises*, 863 N.E.2d 424, 431 (Ind. Ct. App. 2007), *trans. granted* (July 19, 2007), *order vacated and trans. denied* (Sept. 18, 2007). "[W]here the issue is the choice between the law of the place where an allegedly wrongful act or omission took place and the law of the place where physical injury was inflicted, the general rule is that the 'place of the tort' is the place where the injury or death was inflicted and not the place where the allegedly wrongful act or omission took place." *Id.* (citing E.H. Schopler, Annotation, *What is the Place of Tort Causing Personal Injury or Resultant Damage or Death, for Purpose of Principle of Conflict Laws that Law of Place of Tort Governs*, 77 A.L.R.2d 1266, 1273 (1961)).

Although Appellants contest the place where the allegedly wrongful act took place, they do not dispute that Stacy's injury occurred in Illinois. As such, the *lex loci delicti* is established in Illinois' substantive law.

B. *Significance of Illinois' Substantive Law*

Contending that the presumption of the *lex loci delicti* is overcome in favor of Indiana's substantive law, Appellants assert that "[b]ecause the gravamen of the Stephens' claim [] is wholly centered on conduct which predates the [c]rash and occurred in Indiana, the place of the tort, Illinois, bears little connection to this action[.]" (Appellants' Reply Br. p. 6). Appellants contend that the Stephens mischaracterize their action as a routine vehicle accident where liability will be grounded upon violations of the Illinois rules of the road. Instead, Appellants assert, the core of the Stephens' claim is "focused upon [Melton's] operation of his tractor-trailer when he allegedly knew, or reasonably should have known, he suffered from untreated obstructive sleep apnea." (Appellants' Reply Br. p. 5). Clarifying their position, Appellants maintain that the center of the Stephens' suit against Melton emphasizes his untreated sleep apnea, while the claim against Perdue and FPP Business "wholly" relates to the failure to provide training and supervision to Melton and promulgation of appropriate policies—conduct which occurred entirely in Indiana. (Appellants' Reply Br. p. 5) (*See also* Appellants' Br. pp. 17-18).

It is a "rare case" where the place of the tort is insignificant. *Simon*, 805 N.E.2d at 806. In fact, *Simon* appears to suggest that most cases involving an automobile accident will be governed by the laws of the state where the accident occurred. *See id.* ("*[U]nlike in cases involving an automobile accident*, the laws of the state where the crash occurred did not govern the conduct of the parties at the time of the accident.") (emphasis added).

To determine whether this is one of those "rare case[s]," this court should define "the gravamen" of the Stephens' complaint. *See Judge v. Pilot Oil Corp.*, 17 F. Supp.2d 832, 834 (N.D. Ind. 1998). Focusing on the Stephens' Amended Complaints, we note that all the allegations stem from Melton's perceived negligence in operating his vehicle, be it negligently ignoring the rules of the road or negligently driving with knowledge of his severe sleep apnea. Through the doctrine of *respondeat superior* as well as through the independent negligence claims of failure of supervision and training, the Stephens attempt to also hold Perdue and FPP Business responsible for Stacy's injuries. Accordingly, without Melton's alleged negligence in operating his vehicle, there would be no need for this lawsuit.

Moreover, even though at first glance, the claims of negligent supervision and training lodged at Perdue and FPP Business do not find a contact point in Illinois substantive law, we hasten to clarify that these allegations are also embedded in Illinois' Rules of the Road. Specifically, 625 ILCS § 5/18b-105 incorporates certain parts of Title 49 of the Code of Federal Regulations, such as the prohibition that a driver with a respiratory dysfunction is not medically certifiable to drive a CMV; and the prohibition that Perdue/FPP Business can require Melton to operate a CMV while his alertness is likely to be impaired. Although we agree with Appellants that Perdue and FPP Business's failure in supervision and training occurred in Indiana and Maryland, this conduct only became legally negligent as a result of Melton's accident in Illinois.

In addition to emphasizing the location of the tort, the Stephens also point to

Appellants' claims for contribution against the State of Illinois based on the Illinois Joint Tortfeasor Contribution Act pending in the Illinois Court of Claims, alleging Illinois' alleged failure to meet applicable highway engineering standards set forth by the Illinois Department of Transportation; Melton's citation issued by the Illinois State Police for passing within 100 feet of an intersection; and Stacy's pending claim for Illinois' Workers' Compensation benefits for injuries as separate contact points to increase the significance of the *lex loci delicti*. Mindful of *Simon*'s directive to include the "essential elements of the whole cause of action," we must reject the Workers' Compensation Claim as it fails to relate to the gravamen of the Stephens' action. *See Simon*, 805 N.E.2d at 806; *Hubbard*, 515 N.E.2d at 1074 (concluding that Illinois bore little connection because it being the site of the coroner's inquest and source of worker's compensation benefits did not "relate[] to the wrongful death action").

Because the drivers' conduct in operating their motor vehicles prior to the collision will be the focus of attention to determine liability, and that conduct was governed by the rules of the road of the state in which the accident occurred, we conclude that the presumption of the *lex loci delicti* remains significant and is not overcome. *See also Tompkins v. Isbell*, 543 N.E.2d 680, 682 (Ind. Ct. App. 1989) ("[T]he place of the tort in a case arising out of a motor vehicle accident has extensive connection with the legal action."). Moreover, recognizing that the issues presented by Stephens are substantial and not merely remedial or procedural, the conduct must be necessarily governed by Illinois' Rules of the Road as "people do not take the laws of their home state with them when they travel but are subject to the laws of the state in which they

15

act." *Simon*, 805 N.E.2d at 806. Based on the circumstances before us, we conclude that the place of the tort is significant to the action.

However, even if we were to concur with Appellants' arguments and conclude that the presumption of the *lex loci delicti* is overcome, our analysis of *Hubbard's* additional factors would reach the same result.

B. *Second Hubbard Step: Relative Importance of Additional Contacts*

Even if we deemed the State of Illinois, as place of the tort, to be an insignificant contact—which we do not—an analysis of the additional *Hubbard* factors would yield a similar outcome.

Where the place of the tort bears little connection to the legal action, our supreme court allows the consideration of other factors that may be more relevant, such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered. *Hubbard*, 515 N.E.2d at 1073-74. "These factors are not an exclusive list nor are they necessarily relevant in every case." *Simon*, 805 N.E.2d at 805. All contacts "should be evaluated according to their relative importance to the particular issues being litigated." *Id*.

Maintaining that the collision only took place in Illinois by accident, Appellants content that the real connection lies in Indiana. They especially refer to the second contact point—domicile—to bolster their claim: both Melton and Stacy are Indiana residents and were employed by Indiana-based corporations at the time of the accident. Focusing on the negligent acts of supervision, Appellants argue that "[a]lthough the effect of those allegedly negligent acts may have been felt in Illinois, the conduct which

16

is of the greatest significance to the Stephens' claims (*i.e.*, that Melton operated his tractor-trailer when he knew, or reasonably should have known, that he suffered from untreated obstructive sleep apnea and that Perdue and/or FPP [Business] failed to provide Melton with training on the dangers of driving a [CMV] with untreated sleep apnea) is rooted in Indiana." (Appellants' Reply Br. p. 10). Thus, Appellants assert that the *Hubbard* factors favor Indiana because "the relationship between the two drivers and their employers, which took them on routes just over the Indiana border, are centered in Indiana." (Appellants' Br. p. 19).

Although we agree that the residence element of the *Hubbard* test favors Indiana, as both Melton and Stacy are Indiana residents, working for Indiana-based companies, neither of the other two elements support the application of Indiana substantive law to this cause. Despite Appellants' arguments to center the relationship in Indiana, the 'relationship' between the two actors in the collision only came into existence through the accident in Illinois. There is no evidence, and the parties cannot point us to any, that their paths crossed anywhere else but in Illinois.

Furthermore, unlike Appellants, we deem the place of the conduct causing injury to be centered in Illinois. We have defined the gravamen of the Stephens' Complaint to be Melton's negligent operation of his vehicle. Therefore, this conduct is necessarily governed by the law of the state in which he negligently acted, *i.e.*, Illinois. Even though the Stephens asserted negligent training and supervision against Perdue and FPP Business through the doctrine of *respondeat superior*, this negligence only became actionable

17

when the injury occurred at the time of the collision. As our supreme court noted in *Simon*,

> [i]f the state of conduct has a law regulating how the tortfeasor or victim is supposed to act in the particular situation, courts will apply that standard rather than the law of the parties' residence. In fact, this preference of the conduct-regulating law of the conduct state is virtually absolute, winning out even over the law of other interested states. Courts as a practical matter recognize a conduct-regulating exception to the normal interest-based choice-of-law methods. . . . This is also true in Indiana.

*Simon*, 805 N.E.2d at 807 n.12. *See also Judge v. Pilot Oil Corp.*, 17 F. Supp.2d 832, 836 (N.D. Ind. 1998) ("Each state has an interest in having its policies applied to its residents and to conduct that occurs within its borders.").

Accordingly, the trial court correctly determined that in the case at bar, the place of the tort has extensive connection with the legal action, and thus, the doctrine of *lex loci delicti* retains its vitality. We hold that the trial court correctly applied the *Hubbard* test and concluded that Illinois substantive law governs the action.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly held that Illinois substantive law is applicable to a collision which occurred in Illinois between two Indiana residents.

Affirmed.

NAJAM, J. and ROBB, J. concur