2023 IL App (1st) 231617-U

No. 1-23-1617

Order filed December 8, 2023

Fifth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CHRISTINE WHITE, Personal Representative of the Estate of Joseph Schelstraete, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22 L 10746 |
| LAMARION WRIGHT a/k/a CARLA WASHINGTON, an Individual, UBER TECHNOLOGIES, INC., a Foreign Corporation, and RASIER LLC, a Foreign Limited Liability Company, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| (Uber Technologies, Inc., a Foreign Corporation, and Rasier LLC, a Foreign Limited Liability Company-Defendants-Appellants). | ) ) ) ) | Honorable Scott D. McKenna, Judge, Presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court erred when it concluded that the law in Indiana and Illinois did not conflict on the issue regarding whether a decedent's agreement to arbitrate binds a plaintiff's wrongful death claims that arise from that contract. Under a choice-of-law analysis, the express choice-of-law provision for Indiana law applies

to the question of whether plaintiff's wrongful death claims are subject to the arbitration provision; reversed and remanded with directions.

¶ 2     Plaintiff, Christine White, as Personal Representative of the Estate of Joseph Schelstraete, deceased, filed an action based on negligence and asserted claims under the Illinois Wrongful Death Act (740 ILCS 180/0.01 *et. seq.*) (West 2022)) and Illinois Survival Act (755 ILCS 5/27-6) (West 2022)) against defendants, Lamarion Wright a/k/a Carla Washington as well as Uber Technologies, Inc. and Rasier, LLC, a wholly owned subsidiary of Uber (Uber and Rasier collectively referred to as Uber). Plaintiff's son, Joseph Schelstraete, was working as a driver for Uber when he was shot and killed by Lamarion Wright, who had created a fake account in the Uber application. The Uber defendants moved to dismiss and compel arbitration based on an arbitration provision contained in the Platform Access Agreement (PAA) that Schelstraete agreed to in order to use the driver version of the Uber app. The circuit court granted the Uber defendants' motion with respect to the survival claims under the Survival Act but denied their motion as to the wrongful death claims under the Wrongful Death Act.

¶ 3     Under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), the Uber defendants appeal from the order denying their motion to dismiss and compel arbitration of the wrongful death claims. Defendants contend that the choice-of-law principles require application of Indiana law to the PAA and that under Indiana law, the arbitration clause is enforceable as to plaintiff's wrongful death claims. We reverse the circuit court's order that denied the Uber defendants' motion to dismiss plaintiff's wrongful death claims and remand with directions to order those claims to arbitration.

¶ 4                                I. BACKGROUND

¶ 5                             Plaintiff's Complaint

¶ 6     Plaintiff, as personal representative of Schelstraete's estate and for the benefit of the decedent's three minor children, filed a complaint based on negligence and asserted claims against the Uber defendants under the Illinois Survival Act (755 ILCS 5/27-6) (West 2022)) and Illinois Wrongful Death Act (740 ILCS 180/0.01 *et. seq.*) (West 2022)). Plaintiff's claims under the Survival Act and the Wrongful Death Act are based on the same allegations. Plaintiff also alleged two claims against Wright for civil conspiracy/battery under the Survival Act and Wrongful Death Act, but the claims against him are not at issue in this appeal.

¶ 7     Plaintiff alleged that Uber owned and operated a rideshare technology platform that connected drivers to customers in exchange for compensation (driver app) and that connected customers with rideshare drivers to receive rides (rider app). Uber designed, controlled, managed, and maintained the driver and rider apps. Wright created a rider account using the fake name of Carla Washington to conceal his identity, and he used his own email, phone number, and credit card information to do so. Wright and two other individuals formed an agreement and planned to order an Uber ride, surround the driver's vehicle armed with handguns, and then rob the driver. On May 31, 2021, Schelstraete used the driver app as a rideshare driver, and at 7:30 p.m. that day, he received a ride request from Carla Washington with a pickup location, in Cicero, Illinois. When Schelstraete arrived at the pickup location, Wright and two other individuals shot and killed him.

¶ 8     Plaintiff alleged that, at the relevant time, a customer using the rider app could create an account by using only a phone number, email address, and a payment method. When the driver app notified the driver of a ride request, the driver app displayed only the first name of the rider, the ride length, and the pickup location. Uber penalized drivers who denied or cancelled ride requests because those drivers were placed lower on ride request queues in the driver app. Before the date of the incident, rideshare drivers sent Uber a petition requesting that Uber prohibit the use

of fake rider names and accounts to reduce the risk of crimes against drivers. About 3 weeks before the date of the incident, a rideshare driver was the victim of a carjacking at the same location where Schelstraete was killed, and 90 days before the incident 2 rideshare drivers were shot within 5 miles of that location. Plaintiff alleged that Uber knew or should have known that individuals using fake profiles were likely to commit violent crimes against drivers.

¶ 9 Plaintiff further alleged that Uber had a duty to exercise reasonable care while, among other things, designing and maintaining the rideshare platforms. Uber negligently designed the driver app by failing to, among other things, utilize certain safety features. Uber also failed to exercise reasonable care when it failed to, among other things, prevent fraudulent accounts, audit rider application accounts for fraud, provide adequate rider data to rideshare drivers to ensure the drivers' safety, implement a warning system to place rideshare drivers on notice of high crime areas where other drivers were victims of crime, and implement a panic button on the driver app. As a direct and proximate result of Uber's negligent acts or omissions, Schelstraete was shot and killed when he arrived to pick up a rideshare customer.

¶ 10                    Uber Defendants' Section 2-619.1 Motion to Dismiss

¶ 11 Under section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), the Uber defendants moved to dismiss and compel arbitration based on an arbitration provision in the PAA. They argued that Schelstraete agreed to the PAA in order to use and to provide independent transportation services through the app and that the PAA was a valid agreement between Schelstraete and the Uber defendants. The Uber defendants asserted that the circuit court should apply Indiana law to the question of whether plaintiff's claims are subject to arbitration because section 12.7 of the PAA contains an express choice-of-law provision for

Indiana. Under Indiana law, the Uber defendants argued, plaintiff's claims were subject to the decedent's agreement to arbitrate in the PAA.

¶ 12    The Uber defendants attached the PAA to their motion to dismiss. In section 13 of the PAA, it states in capital and bold letters: "IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW." Under section 13.1(a), the PAA states that the arbitration provision "applies to any legal dispute, past, present or future, arising out of or related to your relationship with us" and "survives after the relationship terminates." Section 13.1(b) states that the provision "applies to all claims whether brought by you or us" and "requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial." Under Section 13.1(c), the arbitration provision "applies, without limitation, to disputes between you and us" including "federal, state, or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with us."

¶ 13    In response, plaintiff argued that the arbitration and choice-of-law provisions in the PAA did not bind the beneficiaries on the wrongful death claims because the wrongful death beneficiaries, the decedent's three minor children, did not sign the contract. Citing *Doe v. Carmel Operator*, LLC 160 N.E. 3d 518 (Ind. 2021), and *Carter v. SSC Odin Operating Co., LLC*, 2012 IL App 113204, plaintiff asserted that under the law in Indiana and Illinois, the arbitration provision is unenforceable because the beneficiaries did not sign the PAA. Plaintiff argued that because there is no outcome determinative difference between Indiana and Illinois law, Illinois law applies.

¶ 14                            Circuit Court's Order

¶ 15    In a written order on the Uber defendants' motion to dismiss, the circuit court granted their motion to dismiss the survival claims and referred those claims to arbitration and it denied the motion to dismiss and compel arbitration of the wrongful death claims. In doing so, the court found that under both the law of Indiana and Illinois, the wrongful death claims were not subject to arbitration because the plaintiff was not a signatory to the binding arbitration agreement. The court also found that the arbitration provision was not substantively unconscionable.

¶ 16    Under Rule 307(a)(1) (eff. Nov. 1, 2017), the Uber defendants filed a notice of appeal from the circuit court's order denying their motion to dismiss and compel arbitration of the wrongful death claims.

¶ 17                            II. ANALYSIS

¶ 18                            Conflict of Laws

¶ 19    On appeal, the Uber defendants contend that the court erred when it denied their motion to dismiss and compel arbitration of the wrongful death claims. They assert that the law in Illinois and Indiana is different on the issue regarding whether a decedent's agreement to arbitrate in a contract applies to wrongful death claims arising out of that contractual relationship and that the choice-of-law principles require application of Indiana law to the question of whether the arbitration clause in the PAA is enforceable. Defendants assert that under *Carter*, a personal representative is not bound by a decedent's agreement to arbitrate a wrongful death claim but that in Indiana, under *Sanford v. Castleton Health Care Center,* LLC, 813 N.E. 411, 421 (Ind. Ct. App. 2004), a personal representative is bound by the decedent's acceptance of an arbitration clause to arbitrate a wrongful death claim if the decedent would have been bound to arbitrate that claim

before death. Defendants argue that because there is a conflict in the law of the two states, a choice-of-law analysis is required.

¶ 20    As Illinois is the forum court, we apply Illinois choice-of-law rules. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). Our supreme court has adopted the choice-of-law methodology set forth in the Restatement (Second) of Conflict of Laws (1971) (Restatement). *Id.* However, "[a] choice-of-law determination is only required if a difference in law will affect the outcome of a case." *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 408 Ill. App. 3d 722, 725 (2011). We must first determine whether there is a conflict before we apply a choice-of-law analysis. *Gleim v. Roberts*, 395 Ill. App. 3d 638, 641 (2009). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.,* that there exists a difference in the law that will make a difference in the outcome." *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.,* 2014 IL 116389, ¶ 14. If there is no conflict in the law of the two states, the law of the forum state applies. *Gleim*, 395 Ill. App. 3d at 641. Our review of a circuit court's determination on a choice-of-law issue is *de novo*. *Bridgeview Health Care Center, Ltd.*, 2014 IL 116389, ¶ 14.

¶ 21    Applying these principles, we must first determine whether a conflict exists between Indiana and Illinois law on the issue regarding whether plaintiff's wrongful death claims are subject to an arbitration clause in an agreement that the decedent signed before his death. We conclude that the law in Indiana and Illinois conflicts on this issue.

¶ 22    The parties agree that the controlling case in Illinois is *Carter*. In *Carter*, the decedent signed an arbitration agreement with the defendant nursing home before her death, and the issue was whether the plaintiff, the decedent's legal representative, was compelled to arbitrate her wrongful death claim against the nursing home. *Carter,* 2012 IL 113204, ¶¶ 1, 5. The court

concluded that the plaintiff was not prosecuting the wrongful death claim on behalf of the decedent and was therefore not bound by the decedent's agreement to arbitrate. *Id.* ¶ 57. The court explained that in the plaintiff's wrongful death action, unlike a survival action, she was not acting in the decedent's stead, as "a wrongful-death action does not accrue until death and is not brought for the benefit of the decedent's estate, but for the next of kin who are the true parties in interest." *Id.* Applying *Carter* here, plaintiff's wrongful death claims in Illinois were not brought for the benefit of the decedent's estate but for the next of kin, and therefore, plaintiff is not bound by the decedent's agreement to arbitrate the wrongful death claims.

¶ 23 Turning to Indiana law, we look to *Sanford,* where the defendant nursing home facility moved to compel arbitration of the plaintiff's wrongful death claims based on an arbitration agreement that the plaintiff had signed as the decedent's legal representative with the nursing home before the decedent died. *Id.* at 414, 416. The court explained that under the Indiana Wrongful Death statute (Indiana Code § 34-23-1-1), a "personal representative may maintain a cause of action against an alleged wrongdoer only if the decedent, if alive, might have maintained such a cause of action." *Id.* at 422. The court held that the plaintiff's wrongful death claims were subject to the arbitration agreement, stating that, because the wrongful death claims "arose out of or related to the Contract or any tort claim, they are governed by the arbitration clause" of the contract. *Id.* The court concluded that, "[a]s such, regardless of whether these claims were asserted by [the decedent], while alive, or the Estate, upon her death, they are not justiciable in a court of law, except as a review of an arbitral award." *Id.*

¶ 24 Applying *Sanford* here, plaintiff's wrongful death claims arose out of or relate to the PAA, which the decedent agreed to in order to use the driver app to provide rideshare services. In plaintiff's wrongful death claims, she alleges that the Uber defendants had a duty to use reasonable

care in designing, managing, and maintaining its rideshare platform and driver app, and her allegations are based on the Uber defendants' failures to design the driver app with certain safety features and to, among other things, prevent fraudulent accounts, provide adequate rider data to rideshare drivers to ensure the drivers' safety, and implement a panic button on the driver app. Because plaintiff's wrongful death claims arise out of the relationship that the decedent had with the Uber defendants under the PAA, her wrongful death claims under Indiana law are subject to the decedent's agreement to arbitrate.

¶ 25    We note that plaintiff asserts that the court's conclusion in *Sanford* was based on the fact that the plaintiff, who was the decedent's legal representative and the personal representative of the decedent's estate, signed the arbitration agreement, which is unlike here where only the decedent signed the PAA. We disagree. In *Sanford*, the court rejected the argument that the plaintiff was not bound by the arbitration clause because the plaintiff was not a party to or privy to the contract. *Id.* at 420. The court stated that "regardless of whether Sanford, i.e., [the decedent's] legal representative and the Estate's personal representative, was privy to the contract containing the arbitration clause, the Estate's survival and wrongful death claims arose out of [the defendant's] alleged negligent treatment of [the decedent]." *Id.* In addition, in the court's analysis regarding whether the plaintiff was bound by the arbitration agreement to arbitrate her wrongful death claims, the court did not rely on or discuss the fact that the plaintiff had signed the agreement as the decedent's legal representative. *Id.* at 420-22.

¶ 26    Plaintiff relies on the Indiana case *Doe*, to support her position that in Indiana her wrongful death claims are not bound by the arbitration agreement because neither she nor the decedent's children were signatories to the PAA. The facts in *Doe* are distinguishable. In *Doe*, the plaintiff, the decedent's legal guardian, filed a complaint against a senior living facility and the background

check company the facility hired, alleging that the resident had been sexually abused by an employee. *Doe,* 160 N.E. 3d at 520-21. The background check company moved to compel arbitration based on an arbitration agreement between the resident and the senior living facility. *Id.* at 521. The court concluded that the background check company could not compel arbitration, as it was neither a signatory nor a third-party beneficiary to the contract. *Id.* at 521-23. Unlike *Doe,* which addressed whether a third-party to an arbitration agreement may compel arbitration, the situation here involves whether plaintiff, as the decedent's personal representative, is bound to arbitrate her wrongful death claims that arose from the Uber defendants' contract with the decedent containing the arbitration agreement. *Doe,* therefore, does not apply here.

¶ 27    Accordingly, a conflict exists between Indiana and Illinois law on the issue regarding whether a plaintiff's wrongful death claims are subject to an arbitration agreement that the decedent agreed to before his death. In Indiana, plaintiff's wrongful death claims are subject to the decedent's arbitration agreement, but in Illinois plaintiff's wrongful death claims are not bound by the agreement. The circuit court, therefore, erred in concluding that there was no conflict between the laws of the two states. We next consider which of the two jurisdictional laws applies.

¶ 28                            Choice-of-Law Analysis

¶ 29    Defendants contend that, applying choice of law rules, Indiana law applies to whether the arbitration clause should be enforced. They argue that the court must honor the express selection of Indiana law in the choice-of-law provision contained in the PAA. They assert that Indiana has a relationship to the parties and the transaction, and Illinois public policy does not prevent the application of Indiana law to the PAA, as Illinois public policy strongly favors the arbitration of civil disputes.

¶ 30    Initially, we note that the PAA states that it is "governed by the applicable law of the state where [the decedent] reside[d]" when he accepted the PAA, which was Indiana. Thus, the PAA contains an express choice-of-law provision for Indiana, which plaintiff does not dispute. Rather, plaintiff asserts that the PAA has nothing to do with the choice-of-law analysis as to the claims of non-parties to the PAA. However, as previously discussed, the plaintiff's wrongful death claims arise out of the PAA, so in determining choice-of-law as to the question of whether the arbitration provision in the PAA applied to plaintiff's wrongful death claims, we will look to the analysis that applies when there is an express choice-of-law provision in a contract.

¶ 31    In Illinois, " 'an express choice-of-law provision will be given effect if the provision does not contravene Illinois public policy and the state chosen bears a reasonable relationship to the parties or the transaction.' " *Sabo v. Dennis*, 408 Ill. App. 3d 619, 628 (2011) (quoting *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 982 (2005)); *Emigrant Mortgage Co. v. Chicago Financial Services, Inc.*, 386 Ill. App. 3d 21, 26 (2007) ("So long as the provision does not contravene Illinois public policy and there is some relationship between the chosen forum and the parties to the transaction, an express choice of law provision will be given full effect.").

¶ 32    Here, Indiana law has a reasonable relationship to the parties. The record shows that the decedent's three minor children reside in Indiana and the decedent lived in Indiana when he signed the PAA. A court in Indiana appointed plaintiff the personal representative of the decedent's estate for the purpose of bringing a wrongful death action.

¶ 33    Further, if we apply Indiana law, plaintiff's wrongful death claims would be subject to arbitration under the PAA. Both Illinois and Indiana favor arbitration as a method of resolving disputes. See *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App. 3d 438, 441 (2010) ("Illinois courts favor arbitration to resolve disputes and disfavor finding a waiver of

arbitration rights, due to the fact that arbitration allows for 'an easier, more expeditious and less expensive [disposition of disputes] than [does] litigation.' ") (quoting *Feldheim v. Sims,* 326 Ill. App. 3d 302, 309 (2001); see also *Sanford*, 813 N.E. 2d at 416 (stating that Indiana "recognizes a strong policy favoring enforcement of arbitration agreements"). Applying Indiana law is therefore not contrary to Illinois public policy.

¶ 34        Accordingly, because Indiana has a reasonable relationship to the parties and the transaction and because applying Indiana law would not contravene Illinois public policy, we will give effect to the choice-of-law provision in the PAA. Indiana law therefore applies to the issue regarding whether plaintiff's wrongful death claims are subject to the arbitration agreement. Under Indiana law, plaintiff's wrongful death claims are subject to arbitration agreement under the PAA.

¶ 35        We note that plaintiff asserts that the Uber defendants cannot overcome the strong presumption that Illinois law governs. However, as previously stated, we will give effect to the express-choice-of-law provision for Indiana, as Indiana has a reasonable relationship to the parties or the transaction and applying Indiana law would not contravene Illinois public policy. Nevertheless, we will briefly address plaintiff's assertions. Plaintiff asserts that Illinois is where the decedent was killed. However, plaintiff's allegations were based on the Uber defendants' failure to exercise ordinary care in designing and managing the rideshare platforms to protect drivers. Wright's alleged actions in creating a fake Uber account in the app and then subsequently killing the decedent were not related to Illinois and could have happened in Indiana and is, therefore, not as significant in the analysis. See *Murphy*, 408 Ill. App. 3d at 727-28 (where the Illinois resident plaintiffs were involved in a rollover accident in Michigan while driving a convertible vehicle to their weekend home in Michigan, the court held that it was fortuitous that the rollover occurred in Michigan and the place of injury was not that important and "could have

just as easily happened in Illinois," noting that the plaintiffs claimed that the defendant negligently failed to warn the plaintiffs about the lack of protection the vehicle provided in a rollover accident, not that the rollover occurred).

¶ 36       As for plaintiff's assertions that Illinois is where the decedent completed the majority of his rides, where he received medical treatment, and where his children last saw him, plaintiff does not direct us to anywhere in the record to support her assertions. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (the appellant's brief shall contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Plaintiff also states that one of the defendants lives in Illinois. However, the Uber defendants do not live in Illinois, as they are both incorporated in Delaware with their principal place of business in California. Although plaintiff alleged in her complaint that Wright lives in Illinois, her civil conspiracy/battery claims against him are separate from her wrongful death claims against the Uber defendants, which are based on negligence. See *Townsend*, 227 Ill. 2d at 161 (stating that the Restatement "authorizes the process of *depecage*, which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis").

¶ 37                                    Remaining Issues

¶ 38       Plaintiff contends that we should affirm the circuit court's order denying the Uber defendants' motion to dismiss and compel arbitration of the wrongful death claims on the basis that the PAA is unconscionable. In the circuit court's order that denied Uber's motion to dismiss and compel arbitration of the wrongful death claims, the court ordered arbitration of the survival act claims and expressly found that the arbitration provision in the PAA was not substantively unconscionable. However, plaintiff did not file an appeal seeking reversal from that portion of the

court's order that compelled arbitration of the survival act claims and rejected the argument that the arbitration provision was unconscionable. See *Schroeder Murchie Laya Associates, Ltd. v. 1000 W. Lofts, LLC*, 319 Ill. App. 3d 1089, 1093 (2001) ("[U]nder Rule 307(a)(1), a motion to compel arbitration is a prayer for injunctive relief that is treated like a preliminary injunction or a restraining order, and that the grant or denial of such a motion is reviewable as an interlocutory appeal"). Plaintiff also did not file a cross-appeal from that portion of the court's order. See *Cincinnati Insurance Co. v. Chapman*, 2016 IL App (1st) 150919, ¶ 27 ("Where a general decision for the appellee contains findings unfavorable to the appellee and no cross-appeal is filed, the adverse findings are not properly before the reviewing court."); *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 36 ("If the appellee fails to file a cross-appeal, the reviewing court is confined to the issues raised by the appellant and will only consider the issues raised by the appellee where they are related to the appellant's issues."). We will therefore not consider the issue.

¶ 39     Lastly, we note that defendants contend that even if Illinois law would apply to plaintiff's wrongful death claims, those claims must still be arbitrated based on equitable estoppel, arguing that plaintiff should not be allowed to assert claims against the Uber defendants that are based on their contractual relationship with the decedent but then disclaim the parts of the contract with which she disagrees. Given our disposition, we need not address defendants' equitable estoppel argument.

¶ 40                                III. CONCLUSION

¶ 41     We reverse the circuit court's order denying the Uber defendants' motion to dismiss and compel arbitration of plaintiff's wrongful death claims. We remand to the circuit court of Cook County with directions to order plaintiff's wrongful death claims to arbitration.

¶ 42    Reversed and remanded with directions.